## STATE BANK v. WILCHINSKY et al.

(Supreme Court, Appellate Division, First Department. November 13, 1908.)

1. MORTGAGES (§ 523*)—FORECLOSURE SALE—LIABILITY OF PURCHASER.

A purchaser at a mortgage foreclosure sale, who, after his son made the bid, signed the terms of sale and furnished checks to pay the requisite per cent. of the purchase money, thereby adopted the bid and was responsible for the completion of the contract of purchase.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1523; Dec. Dig. § 523.*]

2. JUDICIAL SALES (§ 27*)—FAILURE TO COMPLY WITH BID—REMEDY.

There is no remedy against the purchaser under a judicial sale, except in the action under which the sale was had.

[Ed. Note.—For other cases, see Judicial Sales, Dec. Dig. § 27.*]

3. MORTGAGES (§ 524*)—FORECLOSURE SALE—FAILURE OF PURCHASER TO COMPLETE PURCHASE—REMEDY OF MORTGAGEE.

Where a purchaser at foreclosure sale in an action to foreclose a prior mortgage failed to complete his purchase, and on the foreclosure of the prior mortgage the rights of the second mortgagee were cut off, the latter wase entitled to an order requiring the purchaser to pay into court either the whole amount of his purchase money or such sum as would indemnify the mortgagee for the failure to complete the purchase.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1524; Dec. Dig. § 524.*]

4. MORTGAGES (§ 488*)—"PAY THE PURCHASE MONEY INTO COURT"—"COMPLETE HIS PURCHASE."

The phrase "pay the purchase money into court," in an order requiring the purchaser to pay into court either the whole amount of his purchase money or such sum as would indemnify the mortgagee for the failure to complete the purchase, is synonymous with the phrase "complete his purchase."

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 488.*]

Appeal from Special Term, New York County.

Mortgage foreclosure action by the State Bank against Henry Wilchinsky and others. From an order determining that one Harris Shapiro was the purchaser at the foreclosure sale, and appointing a referee to ascertain the amount of damages suffered by plaintiff through failure of said Shapiro to complete his purchase, the latter appeals. Modified, and, as modified, affirmed.

Argued before INGRAHAM, McLAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Edward W. S. Johnston, for appellant.
Benjamin N. Cardozo, for respondent.

INGRAHAM, J.  This action was to foreclose a second mortgage on certain real property in the city of New York.  Judgment of foreclosure and sale was entered, and on May 27, 1908, the referee named in that judgment sold the mortgaged premises subject to certain prior mortgages which were described in the notice of sale, and subject also to the costs, disbursements, and allowances, if any, in an action then pending to foreclose one of the prior mortgages.  At the sale the appellant, Harris Shapiro, was present, and after the sale he signed the usual memorandum of sale, describing himself as H. Shapiro, stating that he had purchased the premises described in the advertisement of sale for $14,100, and promised and agreed to comply with the terms and conditions of the sale of the premises as set forth in the terms of sale.  By the terms of sale the purchaser was required to pay 10 per cent. of the purchase money to the referee at the time and place of sale.  He gave to the referee a certified check for $500 and an uncertified check for $910, making in all the sum of $1,410, or 10 per cent. of the amount bid.  By the terms of sale the balance of the purchase money was to be paid to the referee on the 17th of June, 1908, at the referee's office, when the referee's deed would be ready for delivery.  The purchaser failed to attend at the time and place named for the delivery of the deed, and no one appeared on his behalf.  No objections to the title were made to the referee or to the plaintiff's attorneys.  The purchaser simply ignored the whole proceeding.  It subsequently appeared that the sale under the judgment to foreclose the prior mortgage was advertised for the 17th of June, the same day upon which the purchase under the sale in question was to be consummated, but that the sale under the prior mortgage was adjourned from the 17th of June to the 24th of June, when the property was sold, and under that sale the property was conveyed to the purchaser, which cut off the plaintiff as the owner of the subsequent mortgage and all other persons whose interests had accrued subsequent to the mortgage foreclosed.

On June 18th, the day after the appellant had agreed to complete his purchase, an order to show cause was obtained, requiring the appellant to show cause at the Special Term why he should not be ordered and directed to complete his purchase of the premises involved in the action.  The appellant was served with that order, and in opposition thereto he claimed that he was not the purchaser, but that one Herbert Shapiro, his son, was the purchaser, and upon that claim the motion was denied, with leave to renew.  In the meantime the property had been sold under the prior mortgage.  The motion was renewed after the sale under the prior mortgage, and it was there asked that the court should determine that the defendant Harris Shapiro was the purchaser of the premises, and that a referee should be appointed to ascertain the amount of the damage which the plaintiff had suffered by reason of the failure of the said Harris Shapiro to complete his purchase, to take proof whether the title of the premises was marketable, and that the purchaser be directed to pay to

the plaintiff the amount of the damages which the plaintiff may be found to have suffered by reason of the failure of the purchaser to complete his purchase. That motion coming on to be heard, the court determined that the appellant, Harris Shapiro, was the purchaser of the premises described in the judgment of foreclosure and sale, and to have become such purchaser on the sale on May 27, 1908, appointed a referee to ascertain the amount of the damage which the plaintiff has suffered by reason of the failure of the said Harris Shapiro to complete the purchase of the premises and to determine whether the title to the said premises was marketable, and on the coming in of the referee's report the said Harris Shapiro, if the title to the premises be found to be marketable, be directed to pay to the plaintiff the amount of the damages which the plaintiff may be found to have suffered by reason of the failure of Harris Shapiro to complete his purchase. From that order, Harris Shapiro appeals.

I think the court was justified in determining that Harris Shapiro was the purchaser of the property. He signed the terms of sale and furnished the checks to pay the 10 per cent. of the purchase money. The claim that his son was the purchaser seems to have been an afterthought, and, assuming that his son made the bid, Harris Shapiro, by executing the terms of sale, adopted the bid as his own, and is responsible to the referee and to the plaintiff for the completion of his contract. The claim that the referee told Harris Shapiro to sign for his son, and that he signed H. Shapiro for his son, is denied by the referee, and is against the probabilities.

A serious question, however, urged upon this appeal, is whether the court has any jurisdiction to award in this action to the plaintiff the damages sustained by reason of the failure of the purchaser to complete his purchase. The property was sold subject to prior mortgages, and also subject to the action to foreclose one of such mortgages then pending. The purchaser, therefore, is charged with notice of the existence of the prior mortgages, and was bound to take a conveyance of the property subject to them and subject to the action to foreclose one of them that was then pending. Had he complied with the terms of sale and received a deed of the property on June 17, 1908, the day when he agreed to pay the balance of the purchase money and receive the deed, he would have had a week before the property was sold within which to have arranged for the prior mortgages and prevented the sale. He made no application to be relieved from the purchase, and makes no claim now that he was deceived in relation to the incumbrances or the condition of the foreclosure suit then pending. His objections to the title seem to be frivolous; but it is perhaps not necessary to determine that question, as it was reserved for an investigation by the referee. The plaintiff promptly moved on the day after the title was to be completed to compel the purchaser to complete. The purchaser procured an adjournment of that motion, and then procured a denial of it upon what now appears to be an unwarranted claim that he was not the purchaser, and the fact that by the subsequent sale under the judgment of foreclosure on the prior mortgage the rights of all parties to this proceeding were cut off certainly should not relieve the purchaser of all liability to complete his pur-

chase or to pay to the plaintiff the amount of his bid.  By the fault of the purchaser, and without any fault of the plaintiff, the plaintiff has lost the amount secured to it by its mortgage, and it would be fair to assume that, but for the interference by this appellant in making this purchase, the plaintiff would have procured either a conveyance of the property or a purchaser who would have paid the amount due on the mortgage.  Certainly a plaintiff under such circumstances should have some remedy to compel the purchaser to pay to him the amount bid for the property, especially so where the reason of the failure to realize on the mortgage was the unexcused fault of the purchaser.

It was settled at common law that no action could be maintained against a purchaser at a sale made under a decree by a court of equity at law.  In Wood v. Mann, 3 Sumn. 318, Fed. Cas. No. 17,954, Judge Story in a very interesting opinion examines the foundation of the jurisdiction of a court of equity to compel a purchaser at a judicial sale made under its judgment to complete his purchase by paying in the purchase money.  He held that the power is based upon the principle that a purchaser who makes a bid at such a sale makes himself a party to the proceedings of the court and undertakes to do a particular act under the decretal of the court, and he may be compelled to perform what he has undertaken; that "it is a mere incident to the due exercise of the principal jurisdiction, and indispensable to the due enforcement of orders of the court upon persons who have submitted themselves to its jurisdiction."  And he also held that the court had power to compel a surety for the purchaser to pay the purchase money to the court.

The terms "complete his purchase" or "pay the purchase money into court" seem to be synonymous.  What the court has power to do is to compel the purchaser to do what he has agreed to do; that is, pay into court the amount of money that he has agreed to pay upon the delivery to him of a deed which by the terms of sale the referee was to deliver.  As Judge Story said in Wood v. Mann, supra:

"The question here is not whether the plaintiff has not a right to resell, but whether the purchaser and his surety have a right to violate the terms of their contract and to refuse to pay the very purchase money which by their undertaking to the court they were bound to pay in 15 days."

The objection was made in that case that the proper remedy was an action at law for damages on the covenant, but it was held that such an action would not lie; and this case was followed in this state in Miller v. Collyer, 36 Barb. 250, where Mr. Justice Emmet discusses the question as to the right to sue at law, and bases the decision upon the ground that there was no contract with the plaintiff that the plaintiff could enforce at law; that, if such a purchase is to be called a contract at all, it is a contract with the court; that at most it could only be called a quasi contract, as "it was in reality a submission to the jurisdiction of the court in foreclosure suit as a purchaser under the judgment."  And he ended by saying:

"There can certainly be no suit maintained upon it as an express stipulation with any person whatever."

This case has been cited many times by the Court of Appeals with approval. See Archer v. Archer, 155 N. Y. 416, 50 N. E. 55, 63 Am. St. Rep. 688; Stokes v. Hoffman House, 167 N. Y. 554, 60 N. E. 667, 53 L. R. A. 870. We therefore have it established that there is no remedy against the purchaser under a judicial sale, except in the action under which the sale was had. The jurisdiction of the court to enforce the obligation of the purchaser under such a sale is very satisfactorily expressed by Judge Story in Wood v. Mann, supra. The jurisdiction of the court is as extensive as to give to either party the relief to which the situation as it is presented requires. Under ordinary circumstances the proper application would be to compel the purchaser to complete his purchase and to pay, upon receiving the referee's deed, the amount that he had agreed to pay. But it seems to me quite clear that the court is not limited to that relief when for any reason such relief becomes inequitable or impossible.

The purchaser has made himself a party to the proceeding, and thereby has submitted himself to the jurisdiction of the court to require him to complete his purchase. The court can concededly require him to pay the purchase money to the referee upon a tender by the referee of a deed of the property in compliance with the terms of sale. The fact that after the default of the purchaser proceedings over which the plaintiff had no control had made it impossible for the referee to convey to the purchaser what the purchaser was entitled to receive, and what he would have received had he complied with his undertaking and paid the purchase money on the day that it was to be paid, certainly cannot divest the court of jurisdiction to compel the purchaser to do what is proper towards protecting the parties to the action and preventing them from sustaining loss in consequence of the wrongful act of the purchaser in refusing to complete his purchase. In such a case the court had ample jurisdiction to require the purchaser to pay to the referee the purchase price upon receiving from the referee a compliance with the terms of sale so far as it was possible for the referee to comply. In Andrews v. O'Mahoney, 112 N. Y. 567, 20 N. E. 374, Judge Earl says:

"The sale is made by the court, through the sheriff acting as its officer, and, strictly speaking, there can be no written contract. The purchaser could not sue the court, and it could not sue him upon his contract. * * * By bidding he subjects himself to the jurisdiction of the court, and in effect becomes a party to the proceeding, and he may be compelled to complete his purchase by an order of the court and by its process for contempt, if necessary."

In Archer v. Archer, supra, the opinion of Judge Story in Wood v. Mann, supra, and the case of Proctor v. Farnan, 5 Paige (N. Y.) 614, were cited with approval, and it was held that the court had power to enforce a purchase against an assignee of the purchaser who had so far interfered with the proceedings of the court as to submit himself to its jurisdiction. And in Stokes v. Hoffman House, 167 N. Y. 554, 60 N. E. 667, 53 L. R. A. 870, after citing Andrews v. O'Mahoney, supra, and Miller v. Collyer, supra, the court said:

"A purchaser's remedy must therefore necessarily be by application in the action in which the sale was had, and as his claim could not be the subject of

an affirmative suit on his part, so he is equally precluded from setting it up as a counterclaim in a suit brought against him."

A court of equity, therefore, having jurisdiction over a purchaser at a judicial sale by reason of his interfering in the proceeding and submitting himself to the jurisdiction of the court, there certainly can be no limitation of the power of the court to one single motion to compel the purchaser to complete. But, assuming that he is restricted to such a proceeding, it seems to me quite clear that this application is substantially one requiring the purchaser to complete. There can be no question but what the court would have power to require him to pay the whole amount of his bid into court. While the plaintiff does not in terms ask for that relief, he asks what is equivalent to it—that, in view of the fact that in consequence of the intentional default of the purchaser a conveyance by the referee would be of no value, the purchaser be compelled to pay the amount of his bid, less any offset that he would be entitled to in consequence of the situation. This is the substance of an application that any damage that the plaintiff sustained should be paid by the purchaser. I think, therefore, that the court clearly had jurisdiction to entertain the application, that it had power to require the purchaser to pay the whole amount of his purchase money into court or require the purchaser to pay into court such a sum of money as will indemnify the plaintiff for the failure of the purchaser to complete his purchase, and that the order of reference, so far as it appoints a referee to determine the amount that the purchaser should pay, under all the circumstances was proper.

The order, however, contains a further provision that on the coming in of the referee's report the purchaser be directed to pay to the plaintiff the amount of damage which the plaintiff may be found to have suffered by reason of the purchaser's failure to complete his purchase. That seems to be improper at this stage of the proceeding. The question as to the form of the final order, or what relief should be granted to the plaintiff, should be left until an application is made upon the referee's report, in which case the court can make such order as justice requires.

The order appealed from should therefore be modified, by striking out the third clause of the order, and, as so modified, affirmed, with $10 costs and disbursements to the respondent.

McLAUGHLIN, CLARKE, and SCOTT, JJ., concur. HOUGHTON, J., concurs in result.