Max Goldberg, Plaintiff, *v.* Feltman's of Coney Island, Inc., et al., Defendants.

Supreme Court, Special Term, Kings County, April 21, 1954.

*Sidney D. Robins* for Mortimer B. Zuckert, movant.

*Hurley, Kearney, Lane & Mattison* for plaintiff.

McDONALD, J. This is an application for an order setting aside the sale made by the referee pursuant to a judgment of foreclosure and sale and for an order setting aside the referee's deed and directing a resale of the mortgaged premises.

The movant is not a party to the action but holds $25,000 face value of the bonds of Feltman's of Coney Island, Inc., and 2,500 shares of the common stock of said company. This company is both the mortgagor and the obligor on the bond secured thereby and the owner of the equity of redemption in the mortgaged premises.

Before considering the merits of the application, it is necessary to determine whether or not the movant has an interest in the subject matter of the action sufficient to justify a granting of the relief sought. As a bondholder, creditor and stockholder of the defendant corporation, he has an undoubted interest in any surplus moneys which might accrue to the benefit of the defendant, should a surplus result from the sale. In the event that the sale should result in a deficiency, his rights as a creditor to participate in the distribution of other assets of the defendant corporation would be adversely affected.

Such an interest would, in the opinion of the court, justify his intervention in the proceedings unless he is precluded by reason of the fact that he is not a party to the action.

There, however, does not seem to be any requirement in law that the relief sought herein is limited to a party to the action. The courts have consistently held that such relief may be granted at the behest of any person whose rights have been legitimately prejudiced by the sale.

The courts have gone so far as to set a sale aside at the instance of the judgment creditor of the owner of the equity of redemption even though the judgment was not perfected until after the sale (*Matter of Fuller* v. *Brown,* 35 Hun 162; *Goodell* v. *Harrington,* 76 N. Y. 547).

In *Gould* v. *Mortimer* (26 How. Prac. 167, 169) it was held, concerning the right of the applicant to set aside a sale, as follows: " That he was not actually a party is conceded. But his grantor was a party, being the mortgagor, and the plaintiff was in privity with him and bound by the decree, although not actually a party to the action. Every person whose rights are injuriously affected by the judgment or proceedings under it, has the right to move the court to set aside or amend them, although he is not a party to the suit." (See, also, *Kellogg* v. *Howell,* 62 Barb. 280, and *American Ins. Co.* v. *Oakley,* 9 Paige Ch. 258.)

The court holds, therefore, that the movant's interest in the mortgaged premises was adversely affected by the sale and he is authorized in law to maintain proceedings for the relief **requested.**

In support of his application for relief, the movant alleges that the manner in which the sale was conducted was designed to prevent competitive bidding and to make certain that the plaintiff mortgagee would have an advantage which would permit him to purchase the premises at a price below the fair market value; that the manner of the sale resulted from a conspiracy entered into between the referee and the auctioneer, the plaintiff and his attorneys. It is not necessary for the court to determine whether or not such conspiracy existed in fact if, no matter what the cause, the sale was so conducted that in fact it did prevent bona fide bidders from making bids and prevented a fair and impartial sale of the premises at the highest price that could be obtained upon the open market.

This action was commenced to foreclose consolidated mortgages on property located in Coney Island which for years has been known as Feltman's and has been a landmark in the Coney Island area and in the city of New York. The amount alleged to be due upon the mortgage at the time of the foreclosure action was $425,000. The premises had been purchased by the defendant Feltman's of Coney Island, Inc., in the month of May, 1946, for the sum of approximately $850,000 subject to mortgages totaling $650,000, upon which there was a balance due as previously set forth. During the pendency of the action to foreclose the mortgage, which had been commenced by Alfred Feltman, the original mortgagee, the mortgage was assigned to the present plaintiff, Max Goldberg, who was thereupon substituted as party plaintiff in the action and the present attorneys were substituted in place of the attorneys for the former mortgagee. There has been no appearance by any defendant in the action. The action proceeded to judgment and the sale of the premises was directed pursuant to a judgment of foreclosure and sale on the 8th day of March, 1954. Pursuant to said judgment a notice of sale was published as required by the judgment, setting the sale of the premises for April 5, 1954, at twelve o'clock noon, in front of the mortgaged premises. A referee was designated by the court to conduct the sale under the direction of a licensed auctioneer.

The judgment is silent concerning the terms of the sale. The notice of sale was duly published and no reference was made to the terms of sale.

The movant alleges that on the day of the sale when a crowd had assembled to participate therein, the auctioneer, in the presence of the referee, announced that the property would be

sold for all cash. He further alleges that his attorney was present at the sale, representing prospective bidders, although not at that time representing him; that the attorney had in his possession certified checks in the sum of $55,000 and that he advised the auctioneer at the sale that he was making a first bid of $500,000 and was prepared to make a down payment of $55,000 in the event that he was the successful bidder and that he would pay the balance within a reasonable time after the sale. This offer was refused and the sale continued. These facts are admitted in the opposing affidavits although the reasons advanced for such action are contrary to those asserted by the movant. Plaintiff purchased the premises for $450,000 without being required to pay any cash in view of the fact that he was the plaintiff in the action and as such was entitled to the proceeds of the sale up to the extent of his indebtedness.

The movant also asserts that prior to the sale, his attorney and other prospective bidders had attempted to ascertain the terms of sale; that they had made inquiries at the office of the referee and auctioneer, but were unsuccessful in their search for information. He further claimed that the usual practice and custom for all sales of this nature is that the terms of sale require that the prospective purchaser pay 10% of the purchase price and the balance within thirty days thereafter. That such are the usual terms governing such sale is not denied.

A judicial sale should be so conducted as to yield the best price that can fairly and reasonably be obtained. To this end, the sale should be open, fair and regular. The court will reject any procedure adopted to frustrate free and fair judicial sales, and it should observe great care that its practice in acting on reports of judicial sales be such as to inspire confidence in the manner and conduct thereof. Furthermore, it is not enough that the referee, appointed by the court to make the sale, make a literal compliance with the terms of the decree or the statute governing such sale, and he must conduct the sale in a manner fair and just to all, especially to the debtor. Public policy requires and the law contemplates scrupulous impartiality upon the part of the officers conducting sales under the administration of the law, and to avert the possibilities of collusion between the purchaser and the selling officer.

During the argument of the instant motion, upon inquiry by the court, it was admitted that the terms of sale were prepared, as is frequently the custom, in the office of the attorneys for the plaintiff. While this is not unusual, where such foreknowl-

edge gives a decided advantage to the plaintiff, the court must therefore carefully scrutinize all matters affecting the sale to see that this advantage does not adversely affect the rights of others.

The referee in his affidavit submitted on the application states that the reason he set the terms of sale to be " all cash " was that the " subject property is located in the heart of Coney Island.'' The use thereof being seasonal, he therefore deemed it proper to demand all cash. Why it was necessary not to allow a week or even twenty-four hours for the purchaser to supply the purchase price is not set forth. This statement was made in the face of the fact that all but a small portion of the premises is now in possession of tenants under leases and a receiver has been managing the property since the inception of the action.

The plaintiff's rights as a mortgagee conferred upon him the right to see that his debt is paid as a result of the sale, but as a purchaser he had no greater rights than any other prospective purchaser and, under the law, could obtain no advantage as a result of the fact that he was the plaintiff in the action. For the plaintiff to have advance knowledge of the terms of the sale which, it is admitted, were unusual, placed him in a position of advantage which the law will not tolerate.

In contemplation of the law, the referee appointed by the court in a foreclosure action is a ministerial officer, charged only with the duty of making the sale in the manner the court may direct. He is not only the agent of the court but he is also the agent of both the debtor and the creditor, and as such he is bound to act with the utmost fidelity and impartiality. The assumption on the part of a judicial officer, such as a referee in a foreclosure action, to favor the mortgagee in any way would be repugnant to the principles of morality and good conscience and violative of the spirit if not the letter of the law. This would be true even though the actions of the referee may be unintentional and made in good faith if as a result thereof competitive bidding, which would enure to the benefit of all parties to the action, were curtailed. It is the duty of the referee to conduct a sale in such a manner so that the best price can be obtained. Any agreement, combination, arrangement or cabal entered into by the intending bidder and the referee, which was calculated to or would have a tendency to stifle competition, is contrary to public policy.

In *American Ins. Co.* v. *Oakley* (9 Paige Ch. 258, 261, *supra*), the court stated: "Parties interested, however, even where they neglect to attend the master's sale, have a right to expect, and may reasonably presume, that the property will be put up and sold by the master *in the usual manner*; and in such a way as to produce a fair competition among those persons who do attend the sale for the purpose of bidding upon the property." (Emphasis supplied.)

Certainly it must be conceded that the terms of this sale were unusual in the highest degree. To require all parties to the action to present "cash on the barrel head" in a sum approaching one-half million dollars without advance notice thereof, even if made in good faith, would and in this case actually did stifle competitive bidding, and preclude all persons except the plaintiff who was not required to have any cash because of his interest as mortgagee from bidding. This gave the plaintiff an unconscionable advantage.

This point was passed upon precisely in *Goldsmith* v. *Osborne* (1 Edw. Ch. 560, 562), as follows: "There are other circumstances connected with the sale which would be sufficient to invalidate it. I refer to the defendant's conditions of sale; and his refusal to vary them. He required payment and performance of the purchase within an hour's time after the sale; and also, that such payment should be made in specie. The remonstrances of persons who went to purchase were not attended to by him. All this was evidently done in order to deter persons from buying the property and the better to enable the defendant to get it at his own price. This is a practice out of the usual course of statutory sales. It is oppressive and unjust towards a mortgagor. The court will not countenance such proceedings."

As early as 1818, the executors of the estate of the renowned Robert Fulton sought to set aside a public sale on the foreclosure of a mortgage. The court held that even though they were innocently misled and were surprised by the sale, that the sale should be set aside. This is true even though there was not the slightest charge of unfair dealing. The court stated: "There is no imputation of any unfair intention in the plaintiff or the solicitor, or of any unfair conduct at the sale; but I think that, under the circumstances, the defendants were innocently misled, without any culpable negligence imputable to them. The sale ought, therefore, to be opened upon terms." (*Williamson* v. *Dale,* 3 Johns. Ch. 290, 291.)

Certainly prospective bidders at the sale, of whom the movant's attorney was one, not only could have been but were actually surprised by so unusual a demand as to require that almost a half a million dollars would have to be paid in cash or by certified check immediately upon the sale without opportunity to inspect the title to the premises, although it is alleged that a representative of the title company who had searched the title for the benefit of the plaintiff was present at the sale and was prepared to issue the title policy insuring the purchaser. This is in itself a most unusual circumstance.

The general rule concerning the conduct of such sales is clearly set forth in *Fisher* v. *Hersey* (78 N. Y. 387, 388), where Judge RAPALLO, writing for the court, held as follows: " Courts of equity exercise a supervision of sales made under their decrees, which is not in all cases controlled by legal rules, but may be guided by considerations resting in discretion. They may set aside their own judicial sales, upon grounds insufficient to confer upon the objecting party an absolute legal right to a re-sale. They may relieve against mere mistakes, accidents or hardships, or oppressive or unfair conduct of others, though such conduct may not amount to a violation of law; and where fraud is alleged they may order a re-sale upon facts casting such a degree of suspicion upon the fairness of the sale as to render it, in their judgment, expedient, under all the circumstances, to vacate it, though the alleged fraud may not be clearly established. In such cases the rights of third parties are duly regarded, and proper terms imposed * * * ".

The court by whom the sale is conducted not only has the right, but the absolute duty, to control all actions taken over its own judgment and proceedings such as this are directed to the discretion of the court (*Mullins* v. *Franz,* 162 App. Div. 316).

These rules apply with even greater force where the plaintiff is the purchaser at the sale. " Whilst the law secures to the creditor his just demand, and sequestrates the property of the debtor to satisfy it, it still sedulously guards his interests in all the various steps taken leading to a sale of his property. The unfortunate debtor is not beneath its protection. It will not tolerate the slightest undue advantage over him, even by pursuing the strict forms of the law, or positive rules. (Story's Eq. Jur., § 239.) Occupying the position of advantage, it behooved the plaintiffs to pursue their remedy with scrupulous care, lest they should inflict an injury on one who was comparatively powerless. A court of equity justly scrutinizes the con-

duct of a party, placed by the law in a position where he possesses the power to sacrifice the interests of another in a manner which *may* defy detection, and stands ready to afford relief on very slight evidences of unfair dealing, whether it is made necessary by moral turpitude, or only by a mistaken estimate of others' rights.'' (*King* v. *Platt*, 37 N. Y. 155, 160.)

The obligation upon the courts to see that their judicial sales are fairly conducted are as great today as they were in 1833, and the court here can but repeat the words of the Vice Chancellor, William T. McCoun, '' The court will not countenance such proceedings.''

The motion to vacate the sale and set aside the deed executed by the referee is granted in all respects.

Where a sale in a mortgage foreclosure is set aside and a resale ordered, the proceedings upon the resale are *de novo* and as though the first sale had never taken place (*Hamilton* v. *Hittleman*, 224 App. Div. 390, 391).

The court directs that a resale be had of the property pursuant to the provisions of section 986 of the Civil Practice Act upon terms to be set forth in detail in the order to be entered upon this motion, providing however that no more than 10% of the purchase price shall be required to be paid at the time of the sale and the balance upon the closing of title not less than thirty days after the sale, or earlier, at the option of the purchaser. Settle order on notice in accordance with the terms of this decision.