Lazar LEVITIN, Plaintiff,

v.

Hans HOMBURGER, Myna Homburger, Joseph Castellano, Robin Nelson Wolfe, and the Law Firm of Kantor, Davidoff, Wolfe, Rabbino and Kass, Defendants.

No. 94 Civ. 2749 (SS).

United States District Court, S.D. New York.

May 15, 1996.

Lazar Levitin, Brooklyn, N.Y., Pro Se.

Kantor, Davidoff, Wolfe, Rabbino, Mandelker & Kass, P.C. (Matthew C. Kesten, of counsel), New York City, for Defendants Hans Homburger, Myna Homburger, Robin Nelson Wolfe, and the Law Firm of Kantor, Davidoff, Wolfe, Rabbino & Kass.

Genovesi, Berman & Genovesi, Brooklyn, N.Y., Anthony J. Genovesi, Jr., for Defendant Joseph Castellano.

## OPINION AND ORDER

SOTOMAYOR, District Judge.

Defendants Hans Homburger ("Homburger"), Myna Homburger, Robin Nelson Wolfe ("Wolfe"), and the law firm of Kantor, Davidoff, Wolfe, Rabbino & Kass ("Kantor") (collectively, "the Homburger Defendants") move to dismiss the claims brought against them by plaintiff Lazar Levitin ("Levitin") pursuant to Fed.R.Civ.P. 8, 9, 12(b) and 19. Defendant Joseph Castellano ("Castellano") has filed a separate motion to dismiss, and moves in the alternative for summary judgment pursuant to Fed.R.Civ.P. 56.[1]

Also before me are plaintiff's motions to amend his complaint and to disqualify the Homburger Defendants' counsel, and a motion by the Homburger Defendants to impose Rule 11 sanctions against plaintiff.[2]

For the reasons discussed below, the Homburger Defendants' motion to dismiss is **GRANTED**, Castellano's motion for summary judgment is **GRANTED**, plaintiff's motions to amend his Complaint and to disqualify defendants' counsel are **DENIED**, and the Homburger Defendants' motion for Rule 11 sanctions is **DENIED**.

## BACKGROUND

I begin with a recitation of events in state court, where this litigation began twelve years ago. The following summary is drawn largely from the record in the state court, of which I take judicial notice.

At issue is a partnership gone disastrously sour. In 1980, Levitin and Homburger formed a limited partnership, Ocean Parkway Medical Building ("OPMB"), under a written partnership agreement in which Levitin became the sole general partner and Homburger the sole limited partner. Levitin owned 79% of the partnership and Homburger the remaining 21%. OPMB's principal

---

1. In his Reply papers supporting his motion to dismiss, Castellano asserts that at a May 19, 1994 conference, I advised the parties that I intended to convert his motion to dismiss into a motion for summary judgment. On this assumption, Castellano attached a Local Rule 3(G) statement to his papers and expressly invoked Fed.R.Civ.P. 56 in his Reply papers. Castellano misunderstood what I said on May 19. I told both parties only that their motions to dismiss sounded more like motions for summary judgment. Nevertheless, I agree with Castellano that plaintiff has received adequate notice that Castellano's motion would be dealt with as a motion for summary judgment.

2. When Levitan filed his motion to amend his complaint, Castellano responded to the motion. The other defendants wrote to the court indicating they would be willing to respond to the Amended Complaint by way of a motion to dismiss based on the court's ruling on the outstanding motion. I stayed any further submissions on the motion to amend determining that I had received ample submissions by Levitan concerning his amended claims.

asset was a long-term lease on a medical office building in Brooklyn.

In May 1984, Homburger filed a lawsuit in New York Supreme Court against Levitin and OPMB, alleging that Levitin had breached the partnership agreement by, *inter alia,* converting partnership assets. Homburger sought an accounting and damages.

Levitin, who was represented by an attorney during this part of the litigation, failed for two years to comply with court orders to produce certain documents. In an Order entered on September 11, 1986, the court granted Homburger's third request for a default judgment against Levitin and ordered that Levitin's answer be stricken. In addition to adjudicating Homburger's legal claims, the Order reorganized the partnership. It removed Levitin as general partner and permanently enjoined him from playing any role in the management of OPMB. It installed Homburger as general partner of OPMB and stated that he was entitled to an accounting, damages and costs. It appointed Salvatore DeMatteo, a retired Justice of New York's Appellate Division, as Referee to conduct the accounting and to quantify the damages owed to Homburger. It also provided that when the accounting was complete, Homburger could move for a money judgment against Levitin. Finally, the Order permitted either partner to dissolve the partnership upon application to the court.

Levitin, represented by new counsel, appealed the Order to the Appellate Division, Second Department. On May 26, 1987, the Appellate Division unanimously affirmed the judgment and denied the appeal, observing that Levitin's conduct had been "deliberately dilatory, evasive and obstructive" as well as "willful and contumacious," and that the trial court had properly exercised its discretion.

While the appeal was pending, Homburger filed an application in state court seeking an inquest on damages and a substitution of counsel for the partnership. OPMB had been represented by Levitin's attorneys, and Homburger wanted to replace them with his own counsel, Kantor (the defendant law firm in this case). In an Affidavit filed with his motion to substitute counsel, Homburger anticipated that Levitin would oppose the motion on the ground of conflict of interest. Although Homburger conceded that he, represented by Kantor, had sued both Levitin and OPMB, he maintained that OPMB was merely a nominal defendant and that he was seeking relief only against Levitin; therefore his attorneys, if substituted, would not be representing adverse parties. Levitin opposed Homburger's motion to substitute Kantor as counsel for OPMB but the court permitted the substitution on January 28, 1987, and postponed scheduling an inquest pending Justice DeMatteo's completion of the accounting.

In the ensuing months, Levitin provided enough financial information to render the accounting unnecessary. By Order entered on July 14, 1987, the court vacated its appointment of Justice DeMatteo as Referee and scheduled an inquest for October 13, 1987.

The inquest, at which Levitin was represented by new counsel, lasted 12 days and featured testimony from both parties about their financial transactions with the partnership. Ruling from the bench on November 5, 1987, Justice Gerald Held described Levitin's testimony as "rampant with contrivance and connivance," stated that Levitin was "totally unworthy of belief," found that Levitin had "used the monies of the partnership as his own personal account and created his own private fiefdom," and concluded that he had converted $314,500 in partnership assets. The judge determined that Homburger was entitled to receive 21% of the converted funds, proportional to his partnership interest, and an additional $20,000 which Homburger had been fraudulently induced to invest in the partnership plus interest, for a total sum of $112,651. Judge Held further ordered that if OPMB's assets were ever sold, Homburger was entitled to recover an additional $65,000 he had loaned to the partnership.

On December 1, 1987, the court entered a judgment in favor of Homburger in the amount of $112,651. Levitin appealed the judgment to New York's Appellate Division, Second Department. This appeal, too, was denied by a unanimous court on June 3, 1988.

After the money judgment was entered, Homburger returned to the Supreme Court with yet another petition, this time seeking a special proceeding to sell Levitin's partnership interest in OPMB to satisfy all or part of Levitin's debt to Homburger. In his petition, Homburger stated that the anticipated partnership's profits were too meager to satisfy the judgment and that, in light of Homburger's $65,000 lien on partnership assets, Levitin would never receive any proceeds from a sale of OPMB.

Levitin, proceeding *pro se*, filed an answer and an amended answer to Homburger's petition in which he asserted many of the claims he now raises before me. In his amended answer, Levitin claimed that (1) Homburger had violated the partnership agreement by failing to provide him with an accounting of OPMB's cash flow, (2) Justice Held had been improperly assigned to the case because of "illegal fabrications" on the part of Homburger's attorneys, (3) OPMB had ample cash flow to satisfy the judgment against Levitin, (4) OPMB's cash flow was less than it should have been because Homburger had allowed some office space to remain vacant, and (5) Homburger had converted partnership assets. Homburger replied, *inter alia*, that he had been unable to prepare an accounting for the partnership because Levitin had refused to provide him with needed financial documents, despite court orders to do so.

Justice Barry Hurowitz entered judgment in favor of Homburger on March 4, 1988. The judge ordered that Levitin's partnership interest be sold in compliance with CPLR § 5233 [3] and appointed Justice DeMatteo as Receiver for the purpose of conducting the sale.

Levitin received actual notice of Justice Hurowitz's Order by service of process on two separate occasions, June 2 and June 21, 1988. Consistent with CPLR § 5233(b), Homburger published notice of the sale in The New York Times on June 21 and June 23, 1988. The advertisement stated that Levitin's partnership interest would be sold on June 29, 1988, at 11 a.m., on the front steps of the Supreme Court, Kings County. Thus, Levitin received constructive notice of the date and time of sale.

The following account of the sale is taken from a declaration provided by Wolfe, Homburger's attorney, as part of defendants' motion to dismiss. Levitin does not dispute that the following events occurred as described, although he challenges the motives of the parties. At 11 a.m. on June 29, 1988, on the front steps of the Supreme Court, Kings County, Justice DeMatteo opened the bidding on Levitin's interest in OPMB. The sale was attended only by Homburger, his wife, Myna Homburger, and Wolfe. Myna Homburger bid $500. There were no other bids. (Decl. of Robin Nelson Wolfe ¶ 24.) Myna Homburger "paid the $500.00 then and there in cash to Justice DeMatteo, who delivered the sum to Hans [Homburger]." (*Id.*) Homburger then executed a receipt for the sum and agreed to pay Justice DeMatteo a fee of $500. (*Id.*) "That fee was paid by Hans to Justice DeMatteo there and then by check." (*Id.*) [4] On the same day, Justice DeMatteo executed a Receiver's Bill of Sale and Certification, which was filed with the Kings County Clerk on July 7, 1988, thus providing Levitin with constructive notice that his interest in OPMB had been sold. (*Id.* ¶ 25.)

3. CPLR § 5233(b) provides as follows:
 (b) Public notice. A printed notice of the time and place of the sale shall be posted at least six days before the sale in three public places in the town or city in which the sale is to be held, provided however, in the city of New York, in lieu of posting such notice may be advertised in the auction columns of any morning newspaper published daily and Sunday in such city an edition of which appears on the newsstands the previous night and has a circulation of not less than three hundred thousand. An omission to so post or advertise notice, or the defacing or removal of a posted notice, does not affect the title of a purchaser without notice of the omission or offense.

4. A handwritten postscript to the receipt states as follows: "Petitioner waives application to fix Receiver's fee. Same is voluntarily agreed to in the amount of five hundred ($500) dollars as represented by check no. 1270 (photostat attached) which check is acknowledged to have been received by the Receiver." (*Id.*, Exh. AA.) The check is dated June 29, 1988, the same day as the sale. (*Id.*, Exh. BB.) The receipt, however, is dated June 28.

In September 1988, Homburger formed a corporation called Park Ocean Realty Corporation (the "Corporation") and assigned his interest in OPMB to the Corporation. Thus, the Corporation became the general partner of OPMB, and Myna Homburger remained the sole limited partner.

Defendant Castellano was an officer of Dependable Hearing Aid Services Corporation ("Dependable"), a longtime tenant in the OPMB building. In September 1988, Dependable rented additional space in the building and, according to Castellano, agreed to spend $220,000 to $250,000 to renovate the space in exchange for a reduced rent.

Levitin alleges that Castellano's $250,000 expenditure was actually a bribe paid to Homburger "under the table" to obtain additional space for a "fraction of its market value." (Cmpl. ¶ 38.) Levitin contends that this deal between Homburger and Castellano defrauded the partnership and cost Levitin $1.5 million. (Id. at 41–42.)

### Plaintiff's Causes of Action

Levitin filed the instant Complaint on April 15, 1994. At the time, he had not satisfied the state judgment. The Complaint is premised on Levitin's contention that the sale should never have taken place because by the time it occurred, Levitin owed nothing to Homburger. (Cmpl. ¶¶ 79, 91; Pl.'s Decl. in Opp. to Motions to Dismiss ¶ 26 [hereinafter, Pl.'s Decl.] ) Various acts of fraud and conspiracy allegedly surrounded the sale. Levitin claims that he did not know of the sale until 1993 (Cmpl. ¶ 69), that the price paid at auction was grossly inadequate, (Cmpl. ¶ 70), and that the sale was tainted by procedural irregularities. (Cmpl. ¶¶ 86, 87; Pl.'s Decl. ¶¶ 7–32.)

Specifically, the Complaint asserts six causes of action: [5]

1) Constructive fraud and conspiracy by Homburger and Castellano in executing their sublease agreement, which deprived Levitin of the fair value of his partnership interest.

Levitin requests $1.5 million plus punitive damages.

2) Constructive fraud and conspiracy by the Homburger Defendants in arranging a secret sale of Levitin's partnership interest at public auction for $500. Levitin, who places the value of his partnership interest at $2 million, requests $2 million in actual damages and $10 million in lost opportunities damages, plus punitive damages against the Homburgers and treble damages against Kantor and Wolfe.

3) Fraud upon the court and conspiracy by Homburger, Kantor and Wolfe in lying to the court about the partnership's revenues; concealing profits that should have fully satisfied the judgment against Levitin; fraudulently obtaining a court order to sell his partnership interest, and failing to provide Levitin with notice of the sale. Levitin requests $2 million in actual damages, plus punitive damages against Homburger and treble damages against Kantor and Wolfe.

4) Constructive fraud by Homburger in failing to return more than $250,000 which Levitin claims to have invested in the partnership. Levitin requests $260,000 in damages plus interest.

5) Breach of the partnership agreement by Homburger in "abandon[ing] the partnership affairs" by moving to Florida. Levitin requests $500,000 in damages.

6) A demand that Homburger provide an accounting.

### DISCUSSION

Jurisdiction is properly predicated on diversity between the parties under 28 U.S.C. § 1332. Plaintiff was a resident of New Jersey when he filed the instant action; [6] the Homburgers are residents of Florida, and the other defendants are residents of New York.

---

5. My understanding of the claims in the Complaint is derived from two sources: the Complaint itself and a May 21, 1994 letter from Levitin, written at the Court's direction, clarifying the nature of his claims. The Complaint is attached as Exhibit A to the Homburger Defendants' Motion to Dismiss (hereinafter "Defs'. Motion"). The letter of May 21, 1994 is Defs'. Motion, Exh. B.

6. Levitin currently lives in Brooklyn, N.Y.

## A. Levitin's Claims against Castellano

As discussed in n. 1 *supra,* Castellano's motion to dismiss will be treated as a motion for summary judgment. The standard for summary judgment is whether a rational trier of fact, viewing the facts in the light most favorable to the non-moving party, could render a judgment for the non-moving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A motion for summary judgment must be granted if there is no genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986).

■ In this case, Levitin's claims against Castellano fail as a matter of law. Levitin ceased being a partner of OPMB on June 29, 1988, the date his partnership interest was sold. He received constructive notice that the sale had occurred on July 7, 1988, the date the Bill of Sale and Certification was filed with the Kings County Clerk. As Levitin himself concedes, his claims against Castellano are based on a sublease agreement between OPMB and Dependable executed in September 1988. Because Levitin no longer held a partnership interest in OPMB in September 1988, he cannot have been injured by the alleged fraud and thus he has no standing to assert this claim. *See Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975) (plaintiff must allege personal stake in outcome of controversy). Absent an invalidation of the sale of Levitan's partnership interest, a remedy this court can not grant under the *Rooker–Feldman* abstention doctrine which will be discussed below, Levitin's claims can only be for monetary damages arising from the undervaluation of his partnership interest at the time of its sale.

■ Although I need not reach the merits of this cause of action, I note for the record that Levitin has offered no evidence to support his charges of bribery and fraud against either Castellano or Homburger. Castellano, by contrast, has supplied persuasive, competent evidence that Dependable renovated the building as claimed, at the cost claimed, and that the sublease price was consistent with a discount for the renovation. Therefore, even if Levitin had standing to assert this cause of action, his claims against Castellano could not survive a motion for summary judgment. A below-market lease between Castellano and Homburger, standing alone, does not constitute evidence of a bribe or other fraud. Levitin has offered nothing but sheer speculation. Thus, even if Levitan had standing to sue for the business dealing between Castellano and Homburger after Levitan's partnership interest was sold, Levitan's claim against Castellano would be dismissed for failure to have presented competent evidence creating a material issue in dispute in response to Castellano's summary judgment motion.

## B. Levitin's Claims Against the Homburger Defendants

As noted *supra,* Levitin's first cause of action against Homburger, relating to the Castellano sublease, is dismissed with prejudice for lack of standing but with leave to replead in state court if Levitan is successful in state court in invalidating the sale of his partnership interest. The Homburger Defendants also move to dismiss the remaining claims under Fed.R.Civ.P. 12(b)(6).

■ In evaluating a 12(b)(6) motion, a district court's function is to assess the legal sufficiency of the complaint. *Kopec v. Coughlin,* 922 F.2d 152, 155 (2d Cir.1991). The plaintiff's factual allegations must be accepted as true and all reasonable inferences must be drawn in the plaintiff's favor. *Walker v. New York,* 974 F.2d 293, 298 (2d Cir.1992), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993). Dismissal is warranted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991) (citation omitted).

The remaining causes of action overlap substantially—not only with each other, but with claims Levitin has already raised in state court. In essence, Levitin is asking me

to undo what has happened to him in state court and restore to him the alleged value of his partnership interest in OPMB. To the extent that Levitan's claims are based on events that occurred after his interest was sold, as noted *supra,* he has no standing to assert these claims. To the extent that his claims are based on events more than six years old, they are barred by the statute of limitations. To the extent that his claims have been fully adjudicated in state court, they are barred by the doctrines of res judicata and collateral estoppel. To the extent that he fails to state a claim, his allegations cannot survive Rule 12(b)(6). And finally, to the extent that Levitin asks me to review and vacate the state court judgment selling his partnership interest and crediting the amount of that sale against the judgment existing against him, the *Rooker–Feldman* abstention doctrine deprives this Court of jurisdiction. I address all of these issues in turn.

### 1. Statute of Limitations.

■ Levitin's third cause of action, which claims the defendants lied about monies that should have been credited to Levitin, is largely barred by the statute of limitations. Levitin filed the instant Complaint on April 15, 1994. The statute of limitations for constructive fraud is six years; hence, any claim accruing before April 15, 1988 is time-barred. The statute of limitations for breach of contract is also six years. Therefore, to the extent that Levitin claims that Homburger breached the partnership agreement by failing to disclose financial information to the state court, the limitations period is unchanged.

Assuming that Homburger and his attorneys deliberately lied to the court in order to obtain or enforce a wrongful judgment against Levitin, they cannot have done so within the limitations period. The original judgment against Levitin in the amount of $112,651 was entered on December 1, 1987. The special enforcement proceeding began on December 15, 1987 and ended on March 4,

1988, when the court entered judgment directing the sale of Levitin's partnership interest. If defendants committed any fraud upon the court or Levitin, they did so more than six years before Levitin filed suit.

To the extent that Count Three challenges the events surrounding the sale itself, which occurred in June 1988, these claims fall within the limitations period and are fully addressed *infra.*

### 2. Res Judicata/Collateral Estoppel.

■ The fourth and sixth [7] causes of action are barred in their entirety by res judicata/collateral estoppel. Many of the claims in the third cause of action are similarly barred, with the exception of those claims relating to the conduct of the sale itself.

■ Res judicata precludes a litigant from asserting claims that have been, or could have been, litigated in a prior action based on the same nucleus of facts. *E.g., West v. Ruff,* 961 F.2d 1064, 1065 (2d Cir. 1992). Collateral estoppel precludes a party from relitigating an issue which has been necessarily decided in a prior action and in which the party has had a full and fair opportunity to assert his or her claims. *E.g., Polur v. Raffe,* 912 F.2d 52, 55 (2d Cir.1990).

Here, Levitin contends that the enforcement order was obtained by fraud because "by the time of sale, I was not in debt to Homburger, at all." (Pl.'s Decl. ¶ 26.) Count Three alleges that defendants gave false information to the court to secure the enforcement order and that Wolfe and Kantor acted with "an obvious conflict of interest". (Cmpl. ¶ 105.) Count Four alleges that Homburger failed to return $250,000 validly owed to Levitin, and Count Six demands an accounting.

Levitin has had multiple opportunities to raise all of these claims, and he has vigorously done so. He opposed the substitution of Kantor as OPMB's counsel on the ground of conflict of interest. He actively participated

---

**7.** The sixth cause of action, a demand for an accounting, also fails on a second ground: failure to join an indispensable party, OPMB, under Fed.R.Civ.P. 19. Homburger has no current interest in OPMB, having assigned his interest to a corporation. Moreover, under the partnership agreement it is OPMB that has the obligation to provide an accounting.

in the inquest before Justice Held, which featured 12 days of testimony on partnership finances. If Levitin did not assert all available claims pertaining to the credits owed him, and if he did not present all proof available to him, certainly nothing prevented him from doing so. The money judgment against Levitin for $112,651 necessarily included the judge's calculation of credits due to Levitin. Levitin raised these claims a second time in his appeal of the money judgment to the Appellate Division, which was unsuccessful.

He raised his credit claims a third time during the special proceeding before Justice Hurowitz, in which he filed extensive briefing papers in opposition to defendants' petition. He argued explicitly that the partnership's revenues were sufficient to satisfy the judgment and that Homburger owed him an accounting. He did not raise his fraud claims in that proceeding, but nothing prevented him from doing so.[8] Despite his objections, the result of this action was a court Order that Levitin's partnership be sold.

In sum, Levitin has had three bites at this particular apple. He has fully litigated, perhaps even overlitigated, these claims. Given the strong public policy against duplicative litigation and in favor of judicial economy, no reason exists to give him a fourth bite at the same apple. *See, e.g., Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979) (doctrine of collateral estoppel has "dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.")

**3. Standing.**

█ Levitin's fifth cause of action asserts that Homburger violated the partnership agreement by moving to Florida and abandoning the partnership's affairs. Levitin does not specify when Homburger's move occurred, but defendants assert that Hom-

burger moved to Florida after Levitin's partnership interest was sold. (Mem. of Law in Support of Defs.' Motion to Dismiss at 24.) If Homburger's move indeed occurred after the sale, Levitin had no interest in the partnership at that time and thus has no standing to challenge Homburger's conduct.[9] If, on the other hand, Homburger moved to Florida before April 15, 1988, Levitin's claim is barred by the statute of limitations.

This cause of action can survive only if Homburger moved between April 15, 1988 and July 29, 1988 (the date of the sale). In his responsive papers to the motion to dismiss, however, Levitin does not dispute defendants' contention that Homburger moved after the auction date. Accordingly, there is no reason for me to believe that Levitin has a good faith basis, supported by facts, to allege that Homburger moved during the pertinent period, and I dismiss this count with prejudice for lack of standing but with leave to replead in state court if the sale of Levitan's partnership interest is invalidated.

**4. Failure to state a claim.**

█ Levitin's second cause of action for fraud and conspiracy challenges the sale itself, which occurred within the limitations period. Specifically, Levitin contends that the sale price was too low. Even assuming, however, that Myna Homburger paid much less than market value, sale price alone cannot support a cause of action for fraud.

A bidder at a public auction has no obligation to bid the market value of the property. As New York's highest court has observed, a property rarely fetches its market value at auction. "For this reason, it is well settled that mere inadequacy of price ... does not furnish sufficient grounds for vacating a sale." *Guardian Loan Co. v. Early*, 47 N.Y.2d 515, 521, 419 N.Y.S.2d 56, 392 N.E.2d 1240 (1979) (citations omitted). In order to invoke a court's equitable powers, a judgment debtor must show both inadequacy of

---

**8.** Levitan does not deny his knowledge of the allegedly fraudulent statements made to the court. Levitan only denies knowledge of the date of the sale of his partnership interest and of the alleged irregularities concerning the sale.

**9.** As noted with respect to the claims against Castellano, Levitin's sole remedy for post-sale injuries to the partnership would be a claim for monetary damages stemming from the alleged fraudulent sale.

price and something more. "Where the judgment debtor can show not merely disparity in price, but in addition one of the categories integral to the invocation of equity such as fraud, mistake or exploitive overreaching, a court of equity may grant relief." *Id.* (citations omitted).

Because Count Two alleges no basis for fraud aside from inadequacy of price, it must be dismissed.

### 5. *Rooker–Feldman.*

What remains is that portion of Count Three, and to the extent I relate the factual predicates of Count Three back to Count Two, which do allege additional bases for fraud, as *Guardian* requires. In Count Three, Levitin claims that defendants colluded to conduct the sale of his partnership interest without his knowledge and committed numerous procedural violations in the process. (Pl.'s Decl. ¶¶ 7–32.) Specifically, he contends that defendants failed to serve him with the Order directing the sale, failed to serve him with notice of the date and time of sale, failed to serve him with a copy of the bill of sale, and bribed the receiver, Justice DeMatteo, with his $500 fee. (Cmpl. ¶¶ 85–87; Pl.'s Decl. ¶¶ 7–15, 18, 28–29.) He alleges that Justice DeMatteo violated state law by, *inter alia*, failing to take an oath before conducting the sale, failing to have the sale confirmed by the court, and accepting the aforementioned bribe. (Pl.'s Decl. ¶¶ 24, 28–31.) Even taking these allegations as true, however, Levitin's claims fail on several grounds.

The record shows that Levitin received all of the notice required by state law. Levitin opposed the sale in the special enforcement proceeding. Contrary to his assertion, defendants did serve him with the court Order on June 2, 1988. (Def.'s Exh. V.) Hence, he received actual notice that his partnership interest would be sold and that the auction date would be advertised in a daily morning newspaper. To the extent that Levitin considered this form of notice insufficient, his complaint is with Justice Hurowitz, whose Order provided Levitin with no greater right to notice than any other member of the public. Defendants, by placing two advertisements in The New York Times, fulfilled the notice requirements of CPLR § 5233(b).

Moreover, Levitin's broader claims about the conduct of the sale are barred by res judicata. Levitin could have appealed the result of the enforcement proceeding. He chose not to. Short of an appeal, he failed to pursue two other remedies available under New York law. The first remedy lay in CPLR § 5240, "perhaps the most practical method to protect judgment debtors from the often harsh results of lawful enforcement procedures." *Guardian*, 47 N.Y.2d at 519, 419 N.Y.S.2d 56, 392 N.E.2d 1240. CPLR § 5240 allows a court to modify any enforcement procedure, either *sua sponte* or upon motion of an interested party, at any time before the sale is complete. *Id.* at 519–20, 419 N.Y.S.2d 56, 392 N.E.2d 1240. The statute "grants the courts broad discretionary power to control and regulate the enforcement of a money judgment ... to prevent 'unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts.'" *Id.* at 519, 419 N.Y.S.2d 56, 392 N.E.2d 1240 (citations omitted). Because Levitin had actual notice of the court's Order by June 2, 1988, and knew that notice of the auction date would be provided to him only by newspaper advertisement, he had ample opportunity to petition the court for a form of notice he considered sufficient.

After the sale, Levitin failed to take advantage of CPLR § 2003, which provides that a court may set aside a judicial sale *within one year* "for a failure to comply with the requirements of the civil practice law and rules as to the notice, time or manner of such sale, if a substantial right of a party was prejudiced by the defect." Levitin contends that he did not know that the sale had taken place until 1993, five years after he received the court Order. This strains credulity. Given the energetic pace at which Homburger pursued his remedies, Levitin could not reasonably have expected the sale to be delayed for over six years, the date between the order of sale and Levitan's commencement of this action. Moreover, the bill of sale was filed on July 7, 1988. If Levitin had cared to investigate the county records—or even to place a

single telephone call to Homburger's attorney—he would have learned about the completed sale in time to assert all of his claims relating to the sale, under CPLR § 2003.

 There is a third and unavoidable reason, however, why Levitin's claims must fail. The sole remedy for Levitan's fraud allegations is to vacate the sale and credit him with a partnership interest amount greater than that generated by the sale. In essence, Levitin is asking me to review the judgment rendered in the special proceeding, readjudicate his numerous claims, and grant him monetary damages. Under the *Rooker–Feldman* doctrine, I have no authority to grant such relief.

 The *Rooker–Feldman* doctrine is derived from the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Under this doctrine, the federal district courts have no authority to review final judgments of a state court in judicial proceedings. *Feldman*, 460 U.S. at 476, 482, 103 S.Ct. at 1311–12, 1314–15; *see also Gentner v. Shulman*, 55 F.3d 87, 89 (2d Cir.1995). Relief from a state court judgment is available solely within the New York State court system and ultimately from the U.S. Supreme Court. 28 U.S.C. § 1257.

Although there are two exceptions to the *Rooker–Feldman* doctrine, neither applies in this case. A federal district court may evaluate general constitutional challenges to a state law so long as they are not "inextricably intertwined" with the merits of the state court proceeding. *Feldman*, 460 U.S. at 482–83 & n. 16, 103 S.Ct. at 1314–16 & n. 16. Levitin's Complaint raises no general constitutional challenges to state law. The focus of his complaint is entirely on the sale as it relates to him.

The second exception to *Rooker–Feldman* applies when the state court proceedings were not judicial in nature, but administrative or ministerial. *Id.* at 476, 103 S.Ct. at 1311–12. The distinction among these categories, although occasionally subtle, has been well analyzed in the case law. A judicial inquiry "investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *Id.* at 477, 103 S.Ct. at 1312 (citation omitted). A non-adjudicative, administrative proceeding may be characterized as either legislative or ministerial. *Guarino v. Larsen*, 11 F.3d 1151, 1157 (3d Cir.1993). As the Supreme Court has observed in the mandamus context, an act is ministerial only if it does not require the exercise of discretion. *Wilbur v. United States*, 281 U.S. 206, 218, 50 S.Ct. 320, 324, 74 L.Ed. 809 (1930) (ministerial duty is "so plainly prescribed as to be free from doubt and equivalent to a positive command").

In this case, the sale of Levitin's partnership interest was an extension of the special enforcement proceeding, which clearly was a judicial inquiry. Justice DeMatteo conducted the sale as an officer of the court. The nature of a proceeding "depends not on the character of the body but upon the character of the proceedings." *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908); *see also In re Summers*, 325 U.S. 561, 567, 65 S.Ct. 1307, 1311, 89 L.Ed. 1795 (1945) ("The form of the proceeding is not significant. It is the nature and effect which is controlling.") Although a receiver may perform some ministerial acts in the course of conducting a judicial sale, this does not change the essentially adjudicative nature of the proceeding. A receiver "is expected to exercise his discretion and not merely to act in a ministerial capacity." *Emigrant Indus. Sav. Bank v. Consolidated Linen & Laundry Cos.*, 20 N.Y.S.2d 770 (Sup.Ct.1940) (defining receiver's duty in foreclosure sale). As a receiver, Justice DeMatteo stood in the shoes of the judge who appointed him, and he was expected to apply the law in the exercise of his discretion. Therefore, *Rooker–Feldman* applies.

 This is not to say, however, that Levitin has no remedy in state court, particularly for some of the new claims he makes against Justice DeMatteo in his proposed amended Complaint. It is settled law that a court has inherent power to vacate its *own* judgment on proof that fraud has been

perpetrated on the court. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27 (1991). This power encompasses a judicial sale conducted under court orders.

> [T]he court may exercise its inherent equitable power over a sale made pursuant to its judgment or decree to ensure that it is not made the instrument of injustice. Although this power should be exercised sparingly and with great caution, a court of equity may set aside its own judicial sale upon grounds otherwise insufficient to confer an absolute legal right to a resale in order to relieve of oppressive or unfair conduct.

*Guardian,* 47 N.Y.2d at 520–21, 419 N.Y.S.2d 56, 392 N.E.2d 1240. (citations omitted). In New York, the case most often cited for this proposition is *Fisher v. Hersey,* 78 N.Y. 387, 388, which held as follows:

> Courts of equity exercise a supervision of sales made under their decrees, which is not in all cases controlled by legal rules, but may be guided by considerations resting in discretion. They may set aside their own judicial sales, upon grounds insufficient to confer upon the objecting party an absolute legal right to a re-sale. They may relieve against mere mistakes, accidents or hardships, or oppressive or unfair conduct of others, though such conduct may not amount to a violation of law; and *where fraud is alleged they may order a re-sale* upon facts casting such a degree of suspicion upon the fairness of the sale as to render it, in their judgment, expedient, under all the circumstances, to vacate it, though the alleged fraud may not be clearly established.

*Id.* (cited in *Goldberg v. Feltman's of Coney Island, Inc.,* 205 Misc. 858, 866, 130 N.Y.S.2d 723 (Sup.Ct.1954) (emphasis added). Moreover, the court "by whom the sale is conducted not only has the right, but the absolute duty, to control all actions taken over its own judgment, and proceedings such as this are directed to the discretion of the court." *Goldberg,* 205 Misc. at 866, 130 N.Y.S.2d 723.

For the foregoing reasons, Levitin's claims relating to the conduct of the sale are dismissed with leave to replead them in state court.

## C. Levitin's Motion to Amend the Complaint

Levitin's proposed amended Complaint contains 15 causes of action, many of which are identical to claims in the original Complaint and cannot succeed for the reasons discussed *supra.* To these, Levitin adds a constitutional claim under 42 U.S.C. § 1983, a civil RICO claim under 18 U.S.C. § 1962, and additional procedural claims relating to the conduct of the sale. These new allegations do not strengthen his position.

■ Although Levitin asserts jurisdiction, in part, by claiming that his civil rights were violated under 42 U.S.C. § 1983, he makes no further reference to § 1983 in the body of his proposed amended Complaint. Reading his Amended Complaint liberally, as I must, I assume Levitan may be attempting to allege that the notice of sale he received under CPLR § 5233(b) violated due process. Assuming Levitan has stated a valid § 1983 claim for this alleged violation of due process, *Rooker–Feldman* would deprive this Court of jurisdiction over the claim, which would necessarily stem from the lack of notice Levitin says he received in the sale of his partnership interest. As the Supreme Court has stated, "If the constitutional claims presented to a United States District Court are inextricably intertwined" with the merits of a state court judicial proceeding, "then the District Court is in essence being called upon to review the state court decision. This the District Court may not do." *Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. at 1316 n. 16.

■ Levitin's civil RICO claim fails because it is based on the sublease agreement which defendant Castellano's company, Dependable, executed with OPMB in September 1988. As noted *supra,* Levitin was no longer a partner in OPMB in September 1988 and thus lacks standing to assert this claim.

■ Levitin's new allegations against Justice DeMatteo in his Amended Complaint include claims that the receiver failed to (1) post a bond, (2) account for the proceeds of the sale, (3) seek his fee from the court, and (4) ask the court to relieve him of his duties. In addition, Levitin contends in his Memo-

randum of Law that the receiver was improperly appointed because, under the Code of Judicial Conduct, a judicial officer may not serve as a "fiduciary." (Mem. of Law in Support of Motion to Amend at 3.) Levitin asserts that Justice DeMatteo, a retired Appellate Division judge, continues to serve as a settlement judge in the state Supreme Court and thus remains subject to the Code's provisions. (*Id.* at 2.) Finally, Levitin claims that the judge accepted a bribe of $1,000 from defendants in addition to the aforementioned bribe of $500.

These allegations, if true, cannot succeed in this Court. Under *Rooker–Feldman,* as noted, I cannot review and vacate the results of a state judicial proceeding. If vacatur of the sale is warranted, Levitin must present competent, and I emphasize competent, evidence of his claims in state court. Similarly, if Justice DeMatteo was improperly appointed as receiver, this was the Court's error, not defendants'. (Nowhere in Levitin's voluminous submissions does he allege or show competent evidence that *defendants* were responsible for choosing Justice DeMatteo as receiver.) Under *Rooker–Feldman,* I cannot review a state court's exercise of discretion to appoint a receiver of its choosing. If the appointment was improper and if Levitin was harmed as a result, Levitin must present probative evidence of this claim in state court, not here.

■ I recognize that leave to amend a Complaint "shall be freely given when justice so requires," *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), but not when such amendment would be futile. *Id.* (denial not abuse of discretion where amendment would be futile); *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (where leave to amend is "unlikely to be productive," denial not abuse of discretion); *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("where . . . there is no merit in the proposed amendments, leave to amend should be denied"). As currently drafted, Levitin's motion to amend has no hope of success. Therefore, it is denied.

### D. *Levitin's Motion to Disqualify Wolfe and Kantor*

Because Levitin's action in this Court has been dismissed in its entirety, his motion to disqualify Homburger's counsel is denied as moot.

### E. *Motion by Homburger Defendants for Rule 11 Sanctions*

■ Rule 11 provides that litigants must proceed in good faith and make reasonable efforts to assure that their claims are factually and legally valid. Defendants ask me to impose sanctions on Levitin for making "frivolous contentions" in his motions to amend the Complaint and to disqualify Kantor. (Defs.' Mem. of Law in Support of Motion to Impose Sanctions Upon Plaintiff at 1.) Defendants assert, however, that because "Levitin is apparently judgment proof and without assets, a monetary sanction would not have any deterrent effect." (*Id.*) Defendants ask me instead to strike Levitin's "frivolous contentions" from the court record and to preclude Levitin from making any future claims relating to bribes or other criminal conduct on the part of defendants or Justice DeMatteo. Although I have substantial doubts about the good faith basis of many of Levitin's contentions, I have ruled that almost all of the statements· about which defendants complain involve issues concerning the state court proceeding which should be reviewed by the state court under the *Rooker–Feldman* abstention doctrine. I have dismissed Levitin's Complaint with prejudice from being replead in federal court. To this extent, defendants have already obtained the bulk of the relief they seek and their motion for sanctions is moot. To the extent defendants seek an order barring plaintiff from reasserting his claims in state court, such an order would necessitate an adjudication by me of the very issues I have declined to entertain under *Rooker–Feldman* and would be inappropriate to decide in a Rule 11 context.

### CONCLUSION

Many of the claims raised in Levitin's Complaint are barred by the many legal doctrines that I have described herein. Castellano's motion for summary judgment is granted; the Homburger Defendants' motion to dismiss is granted; Levitin's motion to amend the Complaint is denied; Levitin's motion to disqualify Homburger's counsel is

denied as moot, and the Homburger Defendants' motion to impose sanctions on Levitin is denied as moot. The Clerk of the Court is directed to enter judgment dismissing the action against Castellano with prejudice, and dismissing the Complaint against the remaining defendants with prejudice except for those portions of the first, second, third and sixth cause of action which challenge the sale of Levitan's partnership interest at the public auction and which seek an accounting with leave for plaintiff to raise these claims in state court.

SO ORDERED.