**Aaron R. SEWARD and Connie G. Seward, Plaintiffs–Appellants,**

v.

**Philip J. DEVINE, James Devine, Jr., Daniel Horan, John F. Keating, Jr., Kenneth R. Fitzsimmons, Estate of Frank L. Imparato, Jr., and Wilber National Bank, Defendants–Appellees.**

No. 1141, Docket 88–7834.

United States Court of Appeals, Second Circuit.

Argued Aug. 14, 1989.

Decided Nov. 1, 1989.

Donald D. Oliver, Rochester, N.Y. (Arthur L. Stern III, Jules L. Smith, Blitman & King, Rochester, N.Y.), for plaintiffs-appellants.

David E. Peebles, Syracuse, N.Y. (Renee L. James, Hancock & Estabrook, Syracuse, N.Y.), for Wilber Nat. Bank.

Nancy L. Pontius, Syracuse, N.Y. (Mackenzie Smith Lewis Michell & Hughes, Syracuse, N.Y.), for James Devine, Jr., Daniel Horan, John F. Keating, Jr., Kenneth R. Fitzsimmons, and Estate of Frank L. Imparato, Jr.

Philip J. Devine, Oneonta, N.Y., pro se.

Before MINER and ALTIMARI, Circuit Judges, and KELLEHER, District Judge.*

MINER, Circuit Judge:

Plaintiffs-appellants Aaron R. Seward and Connie G. Seward (the "Sewards") appeal from a judgment entered on September 20, 1988, in the United States District Court for the Northern District of New York (McCurn, *Ch.J.*) dismissing their amended complaint on various grounds. The action arose principally in connection with the activities of defendant-appellee Philip J. Devine, the Sewards' attorney and a director of defendant-appellee Wilber National Bank ("WNB" or the "bank"). Essentially, the Sewards alleged that Devine, with the knowledge and consent of the named defendants, was responsible for devising a joint venture and limited partnership to acquire control over the Sewards' farm for the sole purpose of obtaining tax shelter benefits for the investor defendants. The Sewards asserted eight claims in their amended complaint—three RICO claims, two claims based on breach of written contracts, one claim based on breach of

* Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation.

an oral agreement, a fraud claim, and a malpractice claim—all arising from a purported scheme designed to wrest control of the farm from them.

The district court dismissed the action in two stages. First, the court dismissed the contract claims for lack of jurisdiction, Fed. R.Civ.P. 12(b)(1), in accordance with forum selection clauses providing for venue in the New York State Supreme Court, Delaware County. Next, the court dismissed the RICO claims as legally insufficient, Fed.R. Civ.P. 12(b)(6), for failure to plead adequately RICO's "continuity plus relationship" requirement. In the absence of an independent basis for federal jurisdiction, the court then dismissed the fraud and malpractice claims and the claim that the bank breached its oral agreement not to foreclose on the farm, pursuant to Fed.R. Civ.P. 12(b)(1), declining to exercise pendent jurisdiction. The court thereafter entered an order dismissing the amended complaint, and on September 20, 1988, judgment was entered.

On appeal, the Sewards contend that the district court erred in dismissing their RICO claims, arguing that the predicate acts pleaded were neither isolated nor sporadic, and thus satisfied RICO's pattern of racketeering activity requirement; that because the fraud and malpractice claims, as well as the breach of oral agreement claim asserted against the bank only, arose out of the same nucleus of operative facts, the court should have entertained those claims under its pendent jurisdiction; and that because the forum selection clauses contained in the relevant agreements did not bestow exclusive jurisdiction upon the state court, the contract claims were within the district court's subject matter jurisdiction. For the reasons that follow, we affirm the judgment of the district court insofar as it dismissed the contract claims pursuant to the forum selection clauses, but reverse and remand on the remaining claims for proceedings consistent with this opinion.

## BACKGROUND

According to the complaint, the Sewards, husband and wife, were joint owners of two farm properties (hereafter the "farm") located in Franklin, New York. The farm was encumbered by a mortgage, in the amount of $340,000, held by the bank.

Pursuant to a Purchase Agreement, the Sewards sold 99% of the equity in their farm for $120,000 to Rocky Top Vu Farms, a joint venture created under a Joint Venture Agreement and comprised of the individual defendants named in this action. Philip Devine, acting as attorney for both the Sewards and the joint venture, in addition to his roles as a director of the bank and a participant in the joint venture, informed the Sewards that in addition to the $120,000 purchase price, the mortgage debt would be assumed or paid off by the joint venture. Devine also represented that the $120,000 would be paid immediately, in one lump sum, and used to pay off unsecured debts incurred by the Sewards in connection with the affairs of the farm. Prior to entering into the agreement for sale of the farm, Devine had returned, without the knowledge or consent of the Sewards, a down payment that another party had made in connection with an offer to purchase the farm.

The Sewards and the joint venture subsequently executed a Limited Partnership Agreement, pursuant to which each party contributed its interest in the farm to a limited partnership, also named Rocky Top Vu Farms. Under this agreement, the Sewards were to be general partners of the partnership with management authority. This agreement never was filed with the State of New York, and thus the partnership never was duly formed under New York law. See N.Y. Partnership Law § 91 (McKinney 1988).

According to the Sewards, the representations made to induce them to execute these three agreements were only part of defendants' scheme to deprive them of their farm and to use the farm as a tax write-off for the members of the joint venture; other misdeeds also are alleged. Devine, for example, assumed management and control of the farm after the execution of the agreements, even though he had represented that the Sewards would retain

such functions. He expended funds of the partnership "for unnecessary equipment and capital improvements while accruing arrears in current obligations" and ignoring needs of the farm. Moreover, Devine did not expend monies for proper care and feeding of the cows; he cut back milk production in order to qualify for government subsidies; and he charged expenses to the partnership for grain and other supplies, but arranged for those supplies to be delivered elsewhere. The Sewards contend that, in each of these endeavors, Devine acted on "behalf of and with the knowledge and concurrence of the other defendants."

Because the Purchase Agreement provided that the $120,000 purchase money was to be paid in installments, rather than in a lump sum as represented by Devine, the Sewards could not pay their unsecured debts. Furthermore, the partnership did not pay off the Sewards' mortgage. The Sewards defaulted on their obligations to WNB and, despite a specific agreement with the bank that it would forgo collection of the mortgage debt so that the partnership could concentrate on its "operational needs," WNB foreclosed upon the farm.

In August of 1983, the Sewards filed a petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of New York. On January 6, 1986, the matter was converted to a Chapter 7 proceeding, which apparently remains pending. Among the assets of which the bankruptcy trustee took control were a counterclaim and cross-claims asserted by Aaron Seward in the foreclosure action, which had been commenced by the bank against the Sewards and the joint venture in the New York State Supreme Court, Delaware County (Robert A. Harlem, *J.*), in June of 1985.[1] The counterclaim and cross-claims included many of the same factual allegations made here concerning the defendants' scheme to deprive the Sewards of their interest in the farm property. In the state court action, Justice Harlem entered a judgment of foreclosure and sale, dated February 10, 1986, directing that the farm be sold at public auction. The bank bought the farm at the auction, which was held in March 1986. On June 24, 1987, the bank also purchased Aaron Seward's counterclaim (asserted in the foreclosure action) from the trustee in bankruptcy for $3000.

The Sewards commenced this action on March 31, 1988, asserting in their amended complaint causes of action for: violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(b), (c) & (d) (1982); fraud; breach of contract; breach by the bank of an oral agreement not to foreclose on the farm; and malpractice on the part of Devine. Numerous predicate acts were alleged in connection with the RICO claims, including: several instances of mail fraud, 18 U.S.C. § 1341 (1982); the solicitation of funds by Devine for the purchase of the farm by a second group of investors in violation of sections 12 and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77*l* & 77q (1982); the filing by Devine of a false claim in the Sewards' Chapter 11 proceedings, a racketeering act under 18 U.S.C. § 1961(1)(D) (1982); and Devine's representation of the Sewards in an action concerning the collapse of a silo on the farm while he had cross-claims pending against the Sewards in the foreclosure action, said to be "an obstruction of, and endeavor to obstruct the due administration of justice," in violation of 18 U.S.C. § 1503 (1982). All of this conduct allegedly was taken with the "knowledge, concurrence and advance approval" of each of the defendants.

The bank moved on May 24, 1988 to dismiss the amended complaint. It argued that the RICO claims should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because the Sewards had failed adequately to plead the elements of continuity and relatedness necessary to sustain a cause of action under RICO. The bank also urged that, without an independent basis for federal jurisdiction, the balance of the Sewards' claims—based entirely on state law—should be dismissed pursuant to Fed.R. Civ.P. 12(b)(1). In addition, the bank challenged the Sewards' standing to sue, on the

1. Neither Connie Seward nor the joint venture appeared in the foreclosure action.

basis of the sale of the foreclosure action counterclaim, which, it maintained, was identical to and encompassed within the claims asserted by the Sewards in the present action. Finally, the bank argued that the court should dismiss all of the Sewards' claims pursuant to Fed.R.Civ.P. 12(b)(1), because the forum selection clauses contained in the Farm Purchase, Joint Venture, and Limited Partnership Agreements obliged the parties to litigate all legal disputes arising out of those agreements in the New York State Supreme Court, Delaware County. Motions seeking similar relief were made by the other defendants.

Reacting to the bank's challenge to their standing to sue, the Sewards petitioned the bankruptcy court for an order of abandonment as to the counterclaim and crossclaims they had asserted against the bank and the individual defendants respectively in the foreclosure action. The bankruptcy court granted an order approving and confirming the abandonment of those claims which had become property of the bankruptcy estate when the Sewards filed for protection under the bankruptcy laws. On July 12, 1988, the trustee in bankruptcy consented to the transfer of, and thus abandoned, those claims to the Sewards, noting that it would be "burdensome" for the bankruptcy estate to pursue those claims.[2] The trustee noted, however, that he had sold a counterclaim to the bank and that he was relying on plaintiffs' representation that the abandoned claims were "wholly separate" from the counterclaim already sold.

The district court never considered any of the standing issues in dismissing the Sewards' amended complaint. Ruling from the bench on July 26, 1988, the court first dismissed the contract claims,[3] based on the forum selection clauses contained in the

Farm Purchase, Joint Venture, and Limited Partnership Agreements. However, the court declined to dismiss the fraud, malpractice or RICO claims on the basis of the forum selection clauses. With respect to the RICO claims, the court held that under then-prevailing New York law, courts of the State of New York would not entertain such claims; consequently, to relegate those claims to state court "would mean their certain death."

On August 5, 1988, following oral argument, the district court dismissed the RICO claims, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to meet RICO's "continuity plus relatedness" requirement. In dismissing, the court relied on the panel decision in *Beauford v. Helmsley*, 843 F.2d 103 (2d Cir.1988), *vacated*, 865 F.2d 1386 (2d Cir.) (in banc), *vacated and remanded*, — U.S. —, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989), where we held that continuity and relatedness were to be considered in connection with the RICO enterprise, and that "a single criminal episode or scheme does not charge a claim under RICO," *id.* at 110. The district court then declined to exercise pendent jurisdiction over, and thus dismissed, the remaining state law claims. *See* Fed.R.Civ.P. 12(b)(1).

The district court entered an order dismissing the Sewards' amended complaint on August 22, 1988, and judgment was entered on September 20, 1988.[4] The appeal initially was dismissed for failure to comply with the court's filing requirements, but was later reinstated. Prior to reinstatement, Devine moved in the bankruptcy court for an order relieving creditors of the Sewards from that court's earlier order approving abandonment. On October 28, 1988, the bankruptcy court denied the motion without prejudice, expressly declining to decide whether the "property" abandoned to the Sewards was identical to

**2.** It is unclear whether the abandonment was accomplished upon the action of the trustee pursuant to 11 U.S.C. § 554(a) (1988) or upon the court's order pursuant to § 554(b). In either event, the issue of proper notice of proposed abandonment remains open.

**3.** Although the district court at times refers to three contract claims, it appears to have dis-

missed two contract claims based on the forum selection clauses and the claim for breach of an oral agreement based on the lack of pendent jurisdiction.

**4.** The notice of appeal states that the appeal is taken from the order, but we consider the appeal to be from the judgment. *See* Fed.R.App.P. 4(a)(2).

that sold by the trustee to the bank or whether the abandonment was procedurally defective because neither notice nor an opportunity to be heard was provided to the creditors. Appeal has been taken from that order to the United States District Court for the Northern District of New York (Cholakis, J.); argument was heard on February 3, 1989, and no disposition has yet been made. In the meantime, we have been called upon to decide the Sewards' appeal in this action.

## DISCUSSION

■ Initially, we address the Sewards' contention that the district court erred in dismissing their contract claims on the basis of the forum selection clauses.[5] They argue that these clauses merely identify the Supreme Court in Delaware County as an appropriate forum for actions arising out of the interpretation or execution of the pertinent agreements, but do not limit venue or jurisdiction exclusively to that court. We disagree, and note that these agreements plainly provided that venue was to be limited solely to the state court in Delaware County. *See Bense v. Interstate Battery Sys. of America, Inc.*, 683 F.2d 718, 722 (2d Cir.1982) (court should not adopt interpretation that "would render the forum selection clause meaningless"). The Farm Purchase Agreement stated that "the New York State Supreme Court, Delaware County, shall have jurisdiction over all litigation which shall arise out of any disputes or disagreements between the parties concerning a breach or interpretation of any of the terms of this agreement." Similarly, both the Joint Venture and Limited Partnership Agreements provided for "venue and jurisdiction" in Delaware County "for all legal matters and disputes arising from the execution of th[ese] agreement[s]."

■ The Sewards argue that none of the disputes involved in their claims concern "a breach or interpretation" of the terms of the Farm Purchase Agreement, or a matter "arising from execution" of the other agreements. We reject the Sewards' reading of these agreements. The contract claims dismissed by the district court under the forum selection clauses involved either a breach of the Farm Purchase Agreement or a dispute arising from the execution of the other agreements. Since there is absolutely no indication that enforcement of the clauses would be unreasonable or unjust, *see The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972); *AVC Nederland B.V. v. Atrium Inv. Partnership*, 740 F.2d 148, 156 (2d Cir.1984), we hold that the district court properly dismissed these claims.

■ We next consider whether the Sewards had standing to bring any of the claims they assert, an issue the district court never addressed. Defendants all have argued on appeal that the claims asserted by the Sewards in this action are identical to those asserted as the counterclaim and cross-claims in the state foreclosure action, and that the counterclaim and cross-claims were sold by the Sewards' trustee in bankruptcy and purchased by WNB.[6] To the extent, if any, that the claims asserted here are not encompassed within those that were sold by the trustee, defendants argue that they nonetheless remain as assets of the Sewards' estate because they were abandoned improperly. Devine argues, in addition, that the doctrine of res judicata precludes the Sewards from asserting in this suit claims that actually were, or that could and should have been, raised in the foreclosure action in state court. We believe that the district court should have the first opportunity to address these issues. We therefore remand for that purpose, and confine our discussion to those matters necessary for the district court's resolution of the standing issues.

---

5. Although defendants argue to us that the other claims also should have been dismissed on the basis of the forum selection clauses, their failure to cross-appeal from the judgment in that respect impels us to disregard this argument.

6. The record suggests that the bank purchased only the counterclaim asserted by Aaron Seward in the foreclosure action, and not any of the cross-claims.

The trustee in bankruptcy has a duty to collect and liquidate all nonexempt property from the bankrupt's estate. 11 U.S.C. § 704 (1988). The bankruptcy estate encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case," *id.* § 541(a)(1); *see In re Howard's Appliance Corp.,* 874 F.2d 88, 93 (2d Cir.1989), including any causes of action possessed by the debtor, *see In re Cottrell,* 876 F.2d 540, 542–43 (6th Cir.1989); *Sierra Switchboard Co. v. Westinghouse Elec. Corp.,* 789 F.2d 705, 707–09 (9th Cir.1986); H.R.Rep. No. 595, 95th Cong., 2d Sess. 175, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6136 (property of the estate "includes all interests, such as ... tangible and intangible property, [and] ... causes of action, ... whether or not transferable by the debtor"). By operation of section 541, any claims ostensibly belonging to the Sewards and asserted by them in the foreclosure action became property of the estate when they sought protection under the bankruptcy laws.

■ The Sewards maintain that the trustee abandoned those claims to them, and that therefore they were entitled to assert them in this action. However, if, as the defendants contend, the trustee abandoned the claims without affording the Sewards' creditors notice or an opportunity to be heard, in violation of 11 U.S.C. § 554 and Bankr.Rule 6007, then the abandonment was not effected properly. *See Sierra Switchboard,* 789 F.2d at 709; 4 *Collier on Bankruptcy* ¶ 554.01, at 554–4 (15th ed. 1989). Of course, if the abandonment was improper, then it must be determined whether the claims asserted in this action are different from those abandoned to the Sewards and therefore can be pursued.

The district court may have to address also the issue whether the claims asserted in this action, assuming that they are identical to, or at least encompassed within, the claims asserted by the Sewards in the foreclosure action, were in fact purchased by the bank from the bankruptcy estate. Alternatively, the court may have to determine whether the Sewards' claims here, if not the same as those asserted in the foreclosure action in the guise of the counterclaim and cross-claims, could or should have been asserted in that action. In regard to the latter determination, the district court may look to *Romano v. Astoria Federal Sav. & Loan Ass'n,* 111 A.D.2d 751, 490 N.Y.S.2d 244 (2d Dep't 1985), for guidance. There, the appellate division noted that New York adheres to transactional analysis in determining the reach of res judicata. "By this approach, once a cause of action arising out of a 'factual grouping' and 'transaction' has been finally determined, all other claims arising out of the same 'factual grouping' or 'transaction' are also barred." *Id.* at 752, 490 N.Y.S.2d at 245 (citations omitted); *see In re American Tobacco Co.,* 880 F.2d 1520, 1526–27 (2d Cir.1989).

Finally, we turn briefly to the Sewards' RICO claims. In challenging the dismissal of the RICO claims for legal insufficiency, the Sewards argue that the district court erroneously considered the concepts of relatedness and continuity in connection with the RICO enterprise, rather than the pattern of racketeering. We note that the following decisions, all handed down *after* the district court's determination, are instructive on this issue: *H.J. Inc. v. Northwestern Bell Telephone Co.,* —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.,* 879 F.2d 10, 15–17 (2d Cir. 1989); *Beauford v. Helmsley,* 865 F.2d 1386 (2d Cir.) (in banc), *vacated and remanded,* —— U.S. ——, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989). The RICO claims should be examined in the light of the foregoing decisions, in the event that the district court decides that plaintiffs have standing to pursue them.

CONCLUSION

The judgment of the district court is affirmed insofar as it dismissed the contract claims asserted by the Sewards. The matter is remanded so that the court may address the questions of standing we have identified. If the district court finds that plaintiffs have standing to pursue the

RICO claims they have pleaded, those claims should be reexamined in the light of current case law. The exercise of pendent jurisdiction over the Sewards' remaining state law claims should abide that event.