Oscar SMITH, Plaintiff,

v.

**Wayne WEINBERGER, P.C., Wayne Weinberger, Ralph Emproto, Salvatore Safonte, and Antonio Safonte a/k/a Salvatore Safonte, Defendants.**

No. CV 94–3596(ADS).

United States District Court,
E.D. New York.

March 9, 1998.

Oscar Smith, Madison, TN, pro se.

Wayne Weinberger, P.C., Garden City, NY, pro se.

Ralph Emproto, Brooklyn, NY, pro se.

Randolph Z. Volkell, North Bellmore, NY, for Defendant Salvatore Safonte.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This lawsuit arises from the parties' dispute regarding the management and/or ownership of several parcels of real estate. The pro se plaintiff, Oscar Smith ("Smith" or the "plaintiff"), is the owner of seven residential properties in the Arverne area of Queens, New York. Smith hired the defendant, Ralph Emproto ("Emproto") to manage and sell the properties. According to the Amended Complaint, Emproto, with the aid of the defendants Wayne Weinberger ("Weinberger"), Salvatore Safonte ("Salvatore") and Antonio Safonte ("Antonio"), defrauded him of several hundred thousand dollars through the use of "straw buyers" and other fraudulent acts. Smith's original and amended complaint alleged violations of the Racketeer Influenced Corrupt Organizations Act ("RICO") 18 U.S.C. §§ 1961 et seq., and related state law claims for common-law fraud and conversion. In addition, the complaint asserted a single "fraudulent conveyance" claim against Salvatore individually.

This matter is now before the Court on the defendant Salvatore's third dispositive motion, this time an application for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Familiarity with the Court's earlier decisions is presumed, and the Court will not reiterate the extensive factual and procedural background of this case, which is set forth in detail in the prior decisions.

## I. BACKGROUND

### A. The Dispute Between the Parties

The following facts are taken from the Amended Complaint. The plaintiff, Oscar Smith, is a North Carolina resident in the real estate business. In August 1989 Smith employed Emproto, a Queens County resident, to manage and sell seven parcels of real property, located at 69–43, 69–44, 69–49, 69–51, 69–52, 69–56, and 69–60 Hillmeyer Avenue, in Arverne, New York (the "Properties"). Emproto's compensation was a $20,000 credit to be applied to his purchase of the premises located at 69–51 Hillmeyer Avenue. Although at the time of this initial transaction Emproto was a licensed real estate broker, in May 1990 Emproto lost his license, a fact which was never stated to Smith.

To assist him in selling the Properties, Emproto retained the services of the defendant Weinberger, a New York resident and attorney practicing law in Nassau County. Between January 31, 1990 and December 17, 1991, with Weinberger's assistance, Emproto sold the parcels located at 69–43, 69–44, 69–51, 69–52, 69–56 and 69–60 Hillmeyer Avenue. Apparently all of the properties were sold with exception of 69–49. All of the sales were brokered by Emproto, and except for the sale of 69–51, Weinberger represented the buyers in each transaction.

As an incentive for purchasing these properties, each buyer was given a "credit for repairs." Smith alleges however, that this credit was "in total disregard of appraisals made independently" by at least two inspection agencies, and that these credits cost him over $150,000. Furthermore, the buyers for properties located at 69–51, 69–52 and 69–56 were granted purchase money mortgages of $10,000, $15,000, and $15,000 respectively. At the time this lawsuit was filed, no payments had been made on the notes for the 69–52 and 69–56 properties. With respect to the mortgage on 69–51, Smith claims that on April 29, 1991, he was forced to accept repayment of the mortgage under duress at a reduced rate. Further, although Smith fails

to explain the surrounding circumstances, on April 29, 1991, he also delivered four signed satisfactions of mortgage in blank to Weinberger to be held in escrow.

Prior to these events, on December 22, 1988, at the request of Weinberger and Emproto, the defendant Salvatore Safonte gave Smith a "line of credit mortgage" in the amount of $100,000 with a wraparound mortgage for the purpose of renovating 69–51. As part of this transaction, a $10,000 check written to the order of Oscar Smith was signed and given back to Antonio Safonte, apparently representing ten points "as consideration for getting the loan." The total disbursement under this line of credit was $45,000. This debt was repaid in full on January 31, 1990 at the closing on 69–51, which was eventually sold to one Paul Yenco who is not a party to this action.

Similarly, on December 2, 1988 Salvatore, as the mortgagee for the property at 69–52, transferred $50,000 to the borrowers with the sum of $5,000, representing ten points, again being conveyed to Antonio. This loan was repaid on June 30, 1990. Although the allegations based on these transactions are difficult to decipher, the plaintiff apparently alleged that Antonio fraudulently facilitated these loans in order to obtain his fees. However, the nature of the fraud is unclear. In a single allegation, Smith contended that the underlying loans did not exist, and then contradicted himself by identifying the date the two loans for $45,000 and $50,000 were made, when they were repaid, and the amount of interest that accrued. Nevertheless, in a subsequent allegation, Smith apparently maintained that Salvatore on several occasions intentionally misrepresented the amount due on the loans in order to unlawfully obtain a higher return. In support of these allegations, Smith cited to two letters dated October 2, 1989, and November 25, 1991, which allegedly fraudulently overstated the outstanding balances.

Further, in April 1992 or April 1993—the plaintiff gives both dates—Salvatore foreclosed on a mortgage on the property located at 69–49. According to the Amended Complaint, the foreclosure was the "result of usury and fraud." However, the facts supporting these allegations were not set forth in the Amended Complaint, except to say that the Queens County District Attorney was investigating the matter. Smith further alleged that on December 17, 1991, he was billed for legal fees in the amount of $3,950 associated with a foreclosure in addition to receiving an affidavit of Arthur Terranova, Esq., Referee of the Supreme Court, Queens County, stating that Smith owed $71,441.63 plus interest, apparently based on a failure to repay an underlying loan. In addition, the plaintiff alleged that the $3950 in legal fees was paid "under duress" at the closing on the 69–60 property.

Finally, Smith alleged that Salvatore, "conspired to defraud" him with respect to the closing on 69–60 Hillmeyer Avenue "as a result of some under-the-table dealings" with an unrelated company. The details of these fraudulent activities were not identified.

## B. The Court's Prior Decisions

By a Decision and Order dated September 21, 1995, this Court dismissed the plaintiffs claims against Salvatore, as contained in the original Complaint, pursuant to Fed.R.Civ.P. 12(b)(6), without prejudice and with leave to replead. Thereafter, Smith filed an Amended Complaint alleging the following ten counts: (1) violations of RICO pursuant to 18 U.S.C. § 1962(c); (2) conspiracy violations of RICO pursuant to 18 U.S.C. § 1962(d); (3) breach of fiduciary duty pursuant to 18 U.S.C. § 1962; (4) common law fraud; (5) conversion; (6) participation in conversion; (7) and (8) fraudulent conveyances; (9) participation in conspiracy; and (10) perjury.

In a Decision and Order dated July 23, 1996, this Court: (1) granted Salvatore's Rule 12(b)(6) motion to dismiss, with prejudice, the eighth and tenth counts contained in the Amended Complaint for fraudulent conveyance and perjury; (2) denied Salvatore's motion to dismiss the plaintiff's "conversion" claims, the fifth and sixth counts; and (3) granted Salvatore's motion to dismiss the remaining claims pursuant to Fed.R.Civ.P. 12(b)(6) for failure state a claim without prejudice and with leave to file a Second Amended Complaint within thirty days from the date of the Order. In deciding that Smith

had adequately pleaded the two causes of action sounding in conversion, this Court stated:

> Conversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property. *Meese v. Miller*, 79 A.D.2d 237, 436 N.Y.S.2d 496, 500 (4th Dep't 1981). "The test for conversion is whether a party exercises dominion or actually interferes with the property to the exclusion or in defiance of the plaintiff's rights." *Id.* at 500. Further, a claim of conversion will survive a motion to dismiss even where there is an underlying foreclosure judgment if the plaintiff alleges that the foreclosure judgment was wrongfully obtained. *See Hof v. Mager*, 208 A.D. 144, 203 N.Y.S. 161 (1st Dep't 1924); *Korman v. R.H. Macy & Co.*, 142 N.Y.S.2d 455 (Sup.Ct. Queens Cty.1955); 23 N.Y.Jur.2d *Conversion* § 28 ("Conversion is the appropriate form of action for the wrongful seizure of goods under legal process.")

> Applying this standard, the Court finds Smith has stated a claim for conversion against Salvatore sufficient to survive a Rule 12(b)(6) motion. As stated above, in the Court's discussion of Salvatore's res judicata defense, Smith contends that Salvatore wrongfully invoked the legal process by means of "deceit and fraud" to obtain the default foreclosure judgment. Such allegations are sufficient to state a claim for conversion. Accordingly, Salvatore's motion to dismiss Smith's conversion claims pursuant to FedR.Civ.P. 12(b)(6) is denied.

(Decision of July 23, 1996, at 23–24). In permitting the conversion claims to go forward, this Court rejected Salvatore's argument that the plaintiff's claims were barred by the doctrine of res judicata based on the default judgment of foreclosure entered in the New York Supreme Court, Queens County on July 1, 1992, as follows:

> Under New York law the doctrine of res judicata "will bar subsequent actions which seek to relitigate those matters for which a valid final judgment had already been entered in a prior action [and] when the claims interposed could have and should have been litigated in that former action." *Romano v. Astoria Federal Sav. & Loan Ass'n*, 111 A.D.2d 751, 752, 490 N.Y.S.2d 244, 245 (2d Dep't 1985). Res judicata has been applied to default foreclosure judgments to preclude subsequent lawsuits for "willful, wrongful infliction of injury" apparently based on "concealment, fraud, deceit, misrepresentation, illegality and wrongful conduct." *Romano*, 111 A.D.2d at 752, 490 N.Y.S.2d at 245. The Second Circuit has recognized the possibility of applying the doctrine of res judicata to find that a judgment in a New York foreclosure action bars subsequent claims under RICO. *See Seward v. Devine*, 888 F.2d 957, 962–63 (2d Cir.1989) (in dicta).

> However, New York law also provides that a plaintiff may attempt a collateral attack on a judgment based either on a lack of jurisdiction, or a demonstration that the prior judgment was procured by fraud. *Bell v. Town of Pawling*, 146 A.D.2d 729, 730, 537 N.Y.S.2d 214, 215 (2d Dep't 1989) (when making a collateral attack "[a] challenger will not prevail by merely showing fraud in the underlying transaction but must show fraud in the very means by which the judgment was procured"); *see also Morris v. Jones*, 329 U.S. 545, 550–51, 67 S.Ct. 451, 91 L.Ed. 488 (1947) (for recognition of the same principle); 1 B.J. Moore, J. Lucas & T. Currier, Moore's Federal Practice ¶ 0.409[4] (2d ed.1988) (discussing general res judicata principles). Having set forth the governing standards, Salvatore's res judicata argument is easily disposed of. Smith alleges that Salvatore procured the prior foreclosure judgment through "usury and fraud." According to the plaintiff's opposition papers, the alleged fraud refers to a perjured affidavit used to secure the foreclosure judgment. *See Bell, supra.* Accordingly, the Court finds that Salvatore's motion to dismiss based on the defense of res judicata is denied.

(Decision of July 23, 1996, at 10–12).

Thereafter, the plaintiff declined a file a Second Amended Complaint. The only sur-

viving claims against Salvatore are the two New York State law causes of action for conversion.

## II. THE DEFENDANT SALVATORE'S MOTION FOR SUMMARY JUDGMENT

Presently before the Court is Salvatore's motion for summary judgment. Salvatore notes that "This Court [previously] declined to dismiss the conversion claims ... even in the face of the underlying foreclosure judgment, because plaintiff alleged that the foreclosure judgment was wrongfully obtained. The Salvatore Affidavit and its accompanying exhibits, however, demonstrate that there were no improprieties in the foreclosure." (Salvatore's Memorandum of Law, at 2). Boiled down to its essence, Salvatore's Summary Judgment Motion is based largely on his factual contention that "the foreclosure itself ... was both substantively and procedurally proper." (Salvatore's Memorandum of Law, at 2). The plaintiff, in turn, alleges that there are "genuine issues of fact" with respect to his conversion claims, including the "authenticity of the endorsements of payments approved and [of his] signature on various documents" presented in the foreclosure proceedings. (Plaintiff's Response to Summary Judgment, at 2).

## III. DISCUSSION

### A. Summary Judgment: The Standard

A Court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir. 1996), and the movant is entitled to judgment as a matter of law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, the Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995); *Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762

(1987). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 249; *see Vann v. City of New York*, 72 F.3d 1040 (2d Cir.1995).

Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.1996). By the same token, if there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 128 (2d Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir .1991). Finally, the Court is charged with the function of "issue finding", not "issue resolution." *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir.1994).

Additionally, because the plaintiff is proceeding without an attorney, the Court must give wide latitude to the papers filed by the pro se litigant. *Hili v. Sciarotta*, 955 F.Supp. 177, 179 (E.D.N.Y.1997) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 [1972]). The Court recognizes that it must make reasonable allowances so that a pro se plaintiff does not forfeit his rights by virtue of his lack of legal training. *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir.1993). By the same token, "self representation does not exempt a party from compliance with relevant rules of procedural and substantive law." *Id.* (quoting *Birl v. Estelle*, 660 F.2d 592, 593 [5th Cir.1981]).

### B. The *Rooker–Feldman* Doctrine

In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), the Supreme Court held that a Federal District Court has no jurisdiction to consider collateral attacks to State court judgments, as such determinations would be an exercise of appellate jurisdiction when the District Courts are limited strictly

to original jurisdiction. A challenge under the *Rooker–Feldman* doctrine is for lack of subject matter jurisdiction and may be raised at any time by either party or *sua sponte* by the District Court. *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir.1996) (citations omitted).

In *Rooker*, the petitioner sued in district court to have the judgment of the Indiana State court declared null and void because the judgment violated the Contract Clause, the Due Process Clause and the Equal Protection Clause. In affirming the District Court's dismissal for lack of subject matter jurisdiction, the Supreme Court held that only the Supreme Court could entertain an appeal from a State court judgment. In particular, "[i]f the decision [of the state court] was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication." *Rooker*, 263 U.S. at 415, 44 S.Ct. at 150. The Supreme Court further found that "[u]nder the legislation of Congress, no court of the United States other than this Court could entertain a proceeding to reverse or modify the judgement for errors of that character [because to] do so would be an exercise of appellate jurisdiction [and the] jurisdiction possessed by the District Courts is strictly original." *Id.* at 416, 44 S.Ct. at 150. Moreover, if a litigant in State court fails to file a timely appeal, "after that period elapses an aggrieved litigant cannot be permitted to do indirectly what he can no longer do directly." *Id*.

■ Subsequently, in *Feldman*, the Supreme Court extended the *Rooker* doctrine to bar federal courts from entertaining federal claims that are "inextricably intertwined" with a State court's determinations. *Feldman*, 460 U.S. at 482–84 n. 16, 103 S.Ct. at 1316 n. 16. In *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir.1996), the Second Circuit noted that the Supreme Court gave little guidance as to the extent and meaning of the term "inextricably intertwined" to the State court determinations. At the one end, if a plaintiff raises

identical claims in both the federal and state actions, the District Court clearly lacks jurisdiction. *Moccio*, 95 F.3d at 199. On the other hand, where the claims were never presented in the state court proceedings and the plaintiff did not have the opportunity to present the claims in those proceedings, the claims are not "inextricably intertwined" and therefore are not barred under the *Rooker–Feldman* doctrine. *Id.*

■ At a minimum, "inextricably intertwined" means that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding, subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of collateral estoppel or issue preclusion. *Id.* at 199–200. Under *Rooker–Feldman*, therefore, a plaintiff may not institute an action in federal district court that either: (1) directly challenges the holding or decision of a State court, or (2) indirectly challenges the holding or decision of a State court by raising issues in federal court that are "inextricably intertwined" with the State court's decision. In either case, the federal district court would be sitting as an appellate tribunal over the State courts where it has no constitutional or congressional jurisdiction to do so.

In *Moccio*, for example, the plaintiff initially filed an Article 78 proceeding challenging the New York State Office of Court Administration's decision to terminate his employment. The action was transferred to the Appellate Division and dismissed and the plaintiff thereafter failed to appeal. The plaintiff then filed a § 1983 action in federal district court that his termination violated the Due Process Clause and the Equal Protection Clause, although he had not raised these claims in his Article 78 proceeding. The Second Circuit found that as to plaintiff's procedural due process claim, the Article 78 proceeding was the process due and to hold that it was insufficient would run directly contrary to the prohibition in *Feldman* against lower federal court jurisdiction over challenges to State court proceedings, even if those challenges allege that the State court's action was unconstitutional. 95 F.3d at 200.

It is within this framework that the Court addresses the grounds for Salvatore's motion for summary judgment.

■ In the Court's view, to adjudicate Smith's conversion claims would run afoul of the *Rooker–Feldman* doctrine, since his complaint is, at the very least, an indirect challenge to the default judgment of foreclosure entered in the New York Supreme Court. At its core, Smith's complaint seeks an Order from this Court declaring that the New York State judgment of foreclosure is invalid. This Court, as a Federal District Court, is without subject matter jurisdiction to do so. As the Supreme Court noted in *Rooker*, even if the judgment was wrongly procured, it is, nevertheless, an effective and conclusive adjudication until modified or reversed in the appropriate State appellate or collateral proceeding. 263 U.S. at 415, 44 S.Ct. at 150. "In essence, [Smith] is asking me to review the judgment rendered in the [foreclosure] proceeding, readjudicate his numerous claims, and grant him monetary damages. Under the Rooker–Feldman doctrine, I have no authority to grant such relief." *Levitin v. Homburger*, 932 F.Supp. 508, 517–19 (S.D.N.Y.1996), *affirmed*, 107 F.3d 3 (2d Cir. 1997).

The fact that the plaintiff alleges that the State Court judgment was procured by fraud does not remove his claims from the ambit of Rooker–Feldman. For example, in *Levitin*, the plaintiff claimed that his former partner and partnership's law firm fraudulently conspired to obtain a court order to sell the plaintiff's interest at a judicial sale without informing him. *Levitin*, 932 F.Supp. at 513. Citing the Rooker–Feldman Doctrine, United States District Judge Sotomayor concluded that such a claim could not be entertained in District Court. *Id.* at 517–19. This determination was affirmed by he Second Circuit in an unpublished decision. 107 F.3d 3 (2d Cir.1997). Similarly, in *Zipper v. Todd*, No. Civ. 96–5198, 1997 WL 181044, *1–3 (S.D.N.Y.1997), the plaintiffs, former directors of a company, filed suit in District Court alleging that the various defendants had fraudulently obtained approval in Kansas State Court of an order liquidating the company. The District Court concluded that "it

is clear that this court lacks jurisdiction over plaintiff's present cause of actions pursuant to the Rooker–Feldman doctrine. Plaintiff's allegations of fraud … are unavailing." *Id.* at 6 (citations omitted). Here, too, the Court finds that Smith's claims for conversion are merely a thinly-veiled effort to invalidate the State Court's foreclosure judgment, in contravention of Rooker–Feldman.

"This is not to say, however, that [Smith] has no remedy in state court.... It is settled law that a court has inherent power to vacate its own judgment on proof that fraud has been perpetrated on the court. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27 (1991)." *Levitin*, 932 F.Supp. at 518–19. Without expressing any opinion on the merits of Smith's claim, the Court notes its view that the appropriate forum for an attack on the foreclosure judgment is in State Court.

For the foregoing reasons, the defendant Salvatore's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted. Accordingly, the complaint against defendant Salvatore is dismissed in its entirety, without prejudice and with leave to refile, if the plaintiff desires to do so, in State Court.

Finally, the Court notes that "Antonio Safonte" was added as a defendant in the Amended Complaint. It is unclear whether "Antonio" and "Salvatore" are one and the same, since "Antonio" is listed in the caption as "Antonio Safonte, a/k/a Salvatore Safonte." Additionally, there is nothing in the docket reflecting that "Antonio" was served separately with any papers in this matter. The parties have simply dropped any reference to "Antonio" in the captions of their most recent papers.

In view of the foregoing, the remaining parties are directed to appear for a status conference before the Court on March 26, 1998, at 9:00 a.m. in Courtroom A, prepared to discuss the status of the defendant "Antonio Safonte," the issue of settlement, and a date for jury selection.

## IV. CONCLUSION

For the reasons set forth above, it is hereby

ORDERED, that the defendant Salvatore Safonte's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted; and it is further

ORDERED, that the complaint is dismissed as against the defendant Salvatore Safonte, without prejudice and with leave to refile in State court, if the plaintiff so desires; and it is further

ORDERED, that the remaining parties are directed to appear for a status conference before the Court on March 26, 1998, at 9:00 a.m. in Courtroom A, prepared to discuss the status of the defendant "Antonio Safonte," the issue of settlement, and a date for jury selection.

**SO ORDERED.**