Richard SIMPSON, Plaintiff,

v.

PUTNAM COUNTY NATIONAL BANK
OF CARMEL; Ryder Trust; Wayne Ry-
der; John A. Porco, P.C.; John A. Porco;
Curtiss Leibell & Shilling, P.C.; and
William Shilling; Defendants.

No. 97 CIV. 6403(BDP).

United States District Court,
S.D. New York.

Sept. 22, 1998.

Clifford James, Brock, Fensterstock Silverstein & McAuliffe LLC, New York, NY, for Plaintiff.

Daniel A. Seymour, Servino & Seymour, White Plains, NY, for Curtiss Leibell & Shilling P.C. and William Shilling.

Don Abraham, Wilson Elser Moskowitz Edelman & Dicker, New York, NY, for Defendants Putnam County National Bank of Carmel, Ryder Trust, Wayne Ryder, John A. Porco, P.C., John A. Porco.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

Plaintiff Richard Simpson asserts claims against defendants Putnam County National Bank of Carmel (the "Bank"), Ryder Trust, Wayne Ryder, John A. Porco P.C., John A. Porco, Curtiss Leibell & Shilling, P.C. ("Curtiss Leibell"), and William Shilling, under the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C.1961 *et seq.*, and under state law for fraud, tortious interference with contract, intentional infliction of emotional distress, breach of contract, and civil conspiracy.

The Bank, Ryder Trust, Wayne Ryder, John A. Porco P.C., and John A. Porco now move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss plaintiff's complaint on the grounds that plaintiff's RICO claims are barred by the statute of limitations and that plaintiff has failed to state a claim against the defendants for violations of RICO.[1] Defendants also contend that plaintiff is barred from relitigating his claims in federal court by the *Rooker–Feldman* doctrine—which implicates subject matter jurisdiction—as well as res judicata and collateral estoppel.[2] Plaintiff has filed a cross-motion to serve and file an amended complaint to remedy any deficiencies in the original complaint, and to continue the motion to dismiss until after plaintiff takes discovery on certain issues. For the reasons stated below, defendants'. motion to dismiss is granted. Plaintiff's cross-motion to serve and file an amended complaint is denied. Plaintiff's motion for discovery is denied.

## BACKGROUND

In deciding a motion pursuant to Rule 12(b)(6), the court is obligated to construe the pleadings in the plaintiff's favor. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir.1993); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1098 (2d Cir.1988). Likewise, in considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the Court must accept as true all material factual allegations in the Complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *Serrano v. 900 5th Avenue Corp.*, 4 F.Supp.2d 315, 316 (S.D.N.Y.1998). The following facts are accordingly construed.

On or about January 17, 1989, Simpson and his wife executed a mortgage with the Bank as mortgagee. The Simpsons borrowed $750,000 from the Bank and mortgaged five parcels of commercial and residential property. An IGA supermarket building and another retail store were situated on parcel I. Other retail establishments and some residential units were located on parcels II and III, and parcels IV and V contained the Simpsons' home. Simpson was

---

1. This Court notes that both parties have submitted a number of materials outside the pleadings, including affidavits of both parties. Except for those materials of which this Court can take judicial notice, none of the extraneous materials have been considered.

2. Defendants Curtiss Leibell and William Shilling join their co-defendants motion.

to make monthly payments to the Bank of $9,055.31 for five years.

In the latter part of 1989, Simpson's payments to the Bank fell into arrears; shortly thereafter, the Bank, through Porco and his firm, initiated a foreclosure action. Simpson contends that he then entered into an oral agreement with Wayne Ryder, the Bank's vice-president, by which Ryder agreed that the Bank would drop the foreclosure action if Simpson made the payments due on his mortgage and other payments associated with the foreclosure. On or about February 1, 1990, Simpson paid the Bank about $60,000 in full satisfaction of the Bank's demands, and the Bank discontinued the foreclosure action.

In early May 1990, Simpson was again unable to make his monthly mortgage payments. As before, he approached Ryder and told Ryder of his circumstances. Simpson contends that at that time, Ryder told him that the Bank would forbear from foreclosing on the properties. The Bank, however, commenced a second foreclosure action in September 1990. Simpson alleges that after the commencement of the second foreclosure action, he entered another oral agreement with Ryder, that if Simpson paid the arrears, costs, and expenses of the Bank, and used Arnold DiGregorio, a mortgage broker recommended by Ryder, to obtain a loan sufficient to make the payment to the Bank, the Bank would drop the foreclosure action. Simpson agreed, but DiGregorio was unable to arrange funding. On April 10, 1991, the Bank obtained from Putnam County Supreme Court a final judgment of foreclosure on the properties.

On June 7, 1991, Simpson and the Bank entered a forbearance agreement by which the Bank agreed to postpone the foreclosure sale if Simpson made a lump sum payment of two months' arrears upon execution of the agreement and made a further payment of $9,055.31 before July 31, 1991. On September 11, 1991, Simpson and the Bank entered into an amended forbearance agreement further adjourning the foreclosure sale, and specifying that three further monthly payments of $9,055.31 would be made by November 10, 1991. Simpson contends that he ob-

tained and submitted to the Bank proof of funding sufficient to satisfy his obligation to the Bank, but which was contingent on lifting the April 10, 1991 final judgment of foreclosure so that upon payment, a lien could be placed on the properties in favor of the new lender. The Bank, however, did not lift the judgment.

On or about October 28, 1991, Simpson moved by Order to Show Cause to set aside the judgment of foreclosure on the grounds of the Bank's misconduct and bad faith. This motion was denied on February 25, 1992. On April 7, 1992, Simpson moved by Order to Show Cause to reargue the February 25, 1992 order declining to vacate the judgment of foreclosure. The Court, however, adhered to its order and permitted foreclosure proceedings to continue. Simpson appealed the order denying the motion to vacate the judgment of foreclosure. On May 2, 1994, the Appellate Division affirmed the order. *Putnam County Nat'l Bank of Carmel v. Simpson*, 204 A.D.2d 297, 614 N.Y.S.2d 149 (2d Dept.1994).

On April 9, 1992, Simpson commenced a proceeding pursuant to Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. Pursuant to 11 U.S.C. § 362, the pending foreclosure action was subject to the automatic stay. Simpson, however, remained obligated to make his monthly mortgage payments to the Bank.

On November 18, 1992, the Bank moved in Bankruptcy Court to terminate the stay for nonpayment of taxes, insurance premiums, and mortgage payments. On February 1, 1993, the Bankruptcy Court granted the Bank's motion. The Bank resumed foreclosure and sale proceedings in Putnam County State Court, and the properties were sold to the Bank at a foreclosure sale on or about March 15, 1993.

Simpson contends that the defendants took "illegal, secret, and conspiratorial actions" in order to prevent him from making his mortgage payments to the Bank, and that, but for those actions, he would have been able to make all required payments on the properties. Specifically, Simpson cites to what he

terms the "Velardo conspiracy," which concerned two leases that he entered into on October 25, 1990 with Majag Food Corporation ("Majag"), whose stockholders and controlling principals were Angelo Velardo and his wife, Maria Velardo. One of the two leases was a fifteen-year lease for the IGA supermarket on parcel I; the second was a ten-year lease for equipment, stock in trade, fixtures, use of the IGA name, and goodwill. In addition, on October 29, 1990, Angelo Velardo gave Simpson a promissory note for $40,000 in connection with the transaction. Payment on the note was due on February 26, 1991.

Simpson contends that around August 1991, Velardo consulted William Shilling and his firm about the possible effects of the threatened foreclosure on the properties. Simpson claims that Shilling said that Majag had a legal right to refuse to make the lease payments. Simpson contends that the following month, Shilling told Velardo that if Majag ceased making payments to Simpson, the Bank could foreclose on the properties, and would ultimately sell parcel I to Velardo. Simpson alleges that Shilling promised to represent Majag and Velardo and prolong any legal action Simpson brought to force Velardo to pay Simpson until the Bank could foreclose. Around October 1991, Velardo ceased making rental payments to Simpson. Velardo did not pay the $40,000 due on the promissory note.

Simpson contends that he learned of Velardo's dealings and agreement with Shilling on August 29, 1996, after he, Velardo, and Majag entered an agreement to satisfy Velardo's nonpayment under the leases and promissory note between Velardo and Simpson. Simpson commenced this action on August 28, 1997.

## DISCUSSION

*Rooker–Feldman*

█ Under the *Rooker–Feldman* doctrine, the federal district courts are not authorized to exercise what in effect amounts to appellate review of state court judgments. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303,

75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Gentner v. Shulman,* 55 F.3d 87 (2d Cir.1995). Since a challenge under this doctrine implicates subject matter jurisdiction, it may be raised at any time by either party or *sua sponte* by the Court. *Moccio v. New York State Office of Court Admin.,* 95 F.3d 195, 198 (2d Cir.1996). Under *Rooker–Feldman,* a district court may not review a claim that is "inextricably intertwined" with a state court's judgment. *Feldman,* 460 U.S. at 483, n. 16, 103 S.Ct. 1303. A "federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extend that the state court wrongly decided the issues before it." *Pennzoil Co. v. Texaco,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring). Further, even if the state court judgment was wrongly procured, it is effective and conclusive until it is modified or reversed in the appropriate State appellate or collateral proceeding. *Smith v. Wayne Weinberger, P.C.,* 994 F.Supp. 418, 424 (E.D.N.Y.1998) (citing *Rooker,* 263 U.S. at 415, 44 S.Ct. 149).

█ In this case, plaintiff claims that defendants' actions caused him injury through the 1) loss of his real property; 2) loss of his residence; 3) loss of business relationships, esteem, and respect of some who dealt with him; and 4) damage to his creditworthiness and ability competitively to function in his field. But by pursuing these claims here, Simpson seeks to require this Court to revisit the State Court's foreclosure judgment that resulted in the loss of his property, and to declare that judgment invalid on account of the defendants' allegedly fraudulent actions.

█ Under *Rooker–Feldman,* however, this Court has no authority to review the State Court's judgment. Nor does the fact that plaintiff alleges that the State Court foreclosure judgment was procured by fraud and conspiracy change that result. See, *e.g., Smith v. Wayne Weinberger, P.C.,* 994 F.Supp. 418, 424 (E.D.N.Y.1998) (*Rooker–Feldman* barred consideration of claim that would require district court order declaring invalid New York State judgment of foreclo-

sure, even where plaintiff alleged that state court judgment was procured by fraud); *Zipper v. Todd,* No. 96 Civ. 5198, 1997 WL 181044, *5 (S.D.N.Y.1997) (district court could not consider allegations that defendants fraudulently obtained plaintiff's consent to liquidation of company and misappropriated assets, where such consideration would require finding that consent was fraudulently obtained and company was solvent, contrary to facts assumed in Agreed Order of Liquidation approved by state court); *Levitin v. Homburger,* 932 F.Supp. 508, 518 (S.D.N.Y.1996) (district court had no authority to consider claims of fraud that would require court to review judgment rendered in state special proceeding, readjudicate claims, and grant monetary damages), *aff'd,* 107 F.3d 3, 1997 WL 62939 (2d Cir. 1997). A court has inherent power to vacate its own judgment on proof that fraud has been perpetrated on the court. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). State Court, therefore, provides the appropriate forum for plaintiff's attack on the foreclosure judgment.[3]

### Statute of Limitations

■ Even if *Rooker–Feldman* did not bar consideration of plaintiff's claims, plaintiff's RICO claims are time-barred. Civil RICO claims are subject to a four-year statute of limitations. *In re Merrill Lynch Limited Partnerships Litigation,* 7 F.Supp.2d 256, 262 (S.D.N.Y.1997) (citing *Agency Holding Corp. v. Malley–Duff & Assoc., Inc.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987)), *aff'd,* 154 F.3d 56 (2d Cir.1998). The statute begins to run against a defendant for a specific injury when the plaintiff discovers or should have discovered that injury. *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1102–03 (2d Cir.1988). As this action was commenced on August 28, 1997, any

claim that accrued before August 28, 1993 is time-barred.

■ In this case, however, plaintiff contends that defendants fraudulently concealed evidence of their conspiracy from him until August 1996, tolling the statute of limitations for his RICO claims. Under the doctrine of fraudulent concealment, the statute will be tolled if the plaintiff pleads, with the particularity required by Fed.R.Civ.P. 9(b), either active or passive concealment. *Salinger v. Projectavision, Inc.,* 972 F.Supp. 222, 232 (S.D.N.Y.1997). In addition, the Supreme Court has recently decided that in the context of civil RICO, a plaintiff who is not reasonably diligent in uncovering his claim may not assert fraudulent concealment. *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 117 S.Ct. 1984, 1993, 138 L.Ed.2d 373 (1997).

■ In this case, plaintiff has neither properly asserted his due diligence in uncovering his claim nor pled fraud with particularity. In affidavits submitted in the prior state and Bankruptcy court proceedings leading to the foreclosure of plaintiff's property, plaintiff made assertions of fraud and conspiracy similar to the ones at issue here.[4] Plaintiff contends that many of these assertions are irrelevant because they do not pertain to the Velardo conspiracy, of which he had no knowledge until August 29, 1996. Plaintiff's contention, however, is directly belied by statements submitted in his June 19, 1992 affidavit in a related matter between Simpson and Majag, in which Majag sought a judgment against Simpson determining the rights of the parties with respect to the leases between Simpson and Majag, and Angelo Velardo's promissory note. In his affidavit, Simpson states:

> It is respectfully submitted that the plaintiff's application to this Court in the within proceedings is nothing more than a misuse of the judicial process and is an attempt to frustrate the defendant herein in its efforts

---

3. In his RICO statement and his papers in opposition to defendants' motion to dismiss, plaintiff indicates his belief that Justice Hickman, who denied plaintiff's motion to vacate the order of foreclosure, had improper dealings with certain of the defendants in this case. Even if these allegations are true, however, State Court provides the proper forum in which to raise them.

4. This Court may take judicial notice of the record of the prior related proceedings. *See, e.g., Shuttlesworth v. Birmingham,* 394 U.S. 147, 157, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (taking judicial notice of related case between same parties).

to obtain rent monies due and owing to the defendant. . . .

It is respectfully submitted that this is the plan and scheme of the plaintiff. The plaintiff is well aware that the Putnam County National Bank has commenced a foreclosure proceeding, and that foreclosure proceeding has been stayed because of the filing by your deponent of a Chapter 11 Petition in the United States Bankruptcy Court in White Plains, New York. . . . The deponent has brought this matter to the attention of the proper authorities in the United States District Court because your deponent is convinced that there is a conspiracy now afoot to unlawfully deprive your deponent of the property in question and have it foreclosed upon and sold to Majag Food Corp. and/or Angelo Velardo for a distress sum of money, far less than the actual value of the property.

In addition, on June 19, 1992, Simpson submitted an affidavit in Bankruptcy court in opposition to the Bank's motion for an order directing plaintiff to appear for a section 2004 examination. In that affidavit, Simpson states:

It is my contention that during the pendency of an eviction proceeding brought to collect the arrears in rent from Majag Food Corp., as well as legally coercing it to pay its rents on time in order for your debtors to be able to make its monthly post petition payments on time, plaintiff's attorney, John A. Porco, upon information and belief, with the knowledge and consent of the client, the Putnam County National Bank, by an officer of said bank, did engage in collusive conduct to carry out a conspiracy with a Mr. Curtiss, an attorney representing Majag Food Corp. in an eviction proceeding still pending in the Justice Court, Town of Putnam Valley, N.Y. . . . The Exhibit "A" is offered as further detailed evidence of the overt acts carried out by Mr. Curtiss pursuant to the conspiracy with Mr. Porco to delay, impede and obstruct this debtor from collecting the arrears and rent owed from Majag Food Corp.

Thus, plaintiff's affidavits show that by 1992 he had a strong suspicion, if not actual knowledge, of a conspiracy against him. At that point, plaintiff should have exercised due diligence in an attempt to uncover any claim against defendants. *See In re Merrill Lynch Limited Partnerships Litigation,* 7 F.Supp.2d at 266 ("[W]hen a plaintiff is placed on notice of the probability of fraud, he has a duty to inquire, and he will be charged with all knowledge that he would have obtained had he exercised reasonable diligence.") Although plaintiff's papers in opposition to defendants' motion to dismiss contain claims of plaintiff's diligence in investigating his conspiracy allegations, his complaint alleges only, "Until evidence of the inducements offered by defendants to Velardo came to Simpson on August 29, 1996, Simpson could not have discovered by reasonable due diligence the existence of the conspiracy of defendants as set forth above." This Court will not read assertions of diligence into plaintiff's complaint. *See O'Brien v. National Property Analysts Partners,* 719 F.Supp. 222, 229 (S.D.N.Y.1989) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss").

Plaintiff's sole allegation regarding his fraudulent concealment claim is that "[u]pon information and belief, defendants, individually and together, actively and fraudulently concealed from Simpson the illicit agreement and conspiracy they engaged in, as described above, to deprive Simpson of the Properties and otherwise to injure him." This allegation does not particularize the circumstances plaintiff claims constituted the fraudulent concealment and fails to satisfy the pleading requirements of Fed.R.Civ.P. 9(b). Plaintiff's RICO allegations are therefore dismissed as time-barred. In view of this Court's conclusion that it lacks subject matter jurisdiction, and in view of Simpson's failure to assert properly the facts constituting fraudulent concealment either in his complaint or his RICO statement, Simpson's motion to amend his complaint is denied.

## CONCLUSION

For the foregoing reasons, plaintiff's federal claims are dismissed. In view of the dismissal of plaintiff's federal claims, this Court

declines to entertain his state claims. *See, e.g., Salim v. Proulx,* 93 F.3d 86, 92 (2d Cir.1996); *Lennon v. Miller,* 66 F.3d 416, 426 (2d Cir.1995). The Clerk of the Court is directed to dismiss plaintiff's complaint.

**SO ORDERED.**